BERNHARD MEYER v. JOSEPH S. HARRIS ET AL., RE-CEIVERS OF THE PHILADELPHIA AND READING RAILROAD COMPANY.

1. A tenant for years is not responsible in damages to a third person for maintaining and keeping in repair, upon the demised premises, a structure erected thereon by his landlord prior to the commencement of his term, which operates to the nuisance of such third person; the remedy of the injured party is against the landlord alone.

2. The owner of premises upon which a nuisance has been erected by his predecessor in title is responsible for injuries occasioned thereby, if he continues the nuisance.

3. A party having possession of premises under a lease for nine hundred and ninety-nine years is, for all practical purposes, the owner thereof; and his responsibility for maintaining and keeping in repair a structure upon the premises so held by him, which operates to the nuisance of a third person, is that of an owner, and not that of a tenant for years.

4. Since the passage of the act of congress of March 3d, 1887 (24 *U. S. Stat.*, *ch.* 373, *p.* 552, § 3), it is not necessary to obtain, from a federal court which has appointed a receiver of a railroad company, permission to sue such receiver for injuries caused by his maintaining and keeping in repair a structure upon the lands of the company, which operates to the nuisance of the party who sues.

---

In tort. Demurrer to pleas. Case certified from Somerset Circuit Court.

Argued at June Term, 1897, before MAGIE, CHIEF JUSTICE, and Justices DEPUE, VAN SYCKEL and GUMMERE.

For the demurrant, *Henry M. T. Beekman.*

The first count of the declaration alleges that the plaintiff is the owner of a farm in the county of Somerset lying on the north and south sides of the Raritan river; that in 1872 the National Railway Company commenced the construction and erection of embankments, piers and abutments connected with a bridge spanning that river about three thousand feet to the east of the plaintiff's farm; that in the construction of said embankments, piers, abutments and bridge they left an insufficient opening for the passage of the water of the river, and did close and cut off an ancient high-water channel which connected with said river a short distance above and to the west of said embankments, and which did assist the said river in the discharge of its waters in times of ordinary high water; and in the closing of said high-water channel the said National Railway Company failed to construct a suitable passageway through said embankments whereby said old high-water channel could continue to discharge its waters as it formerly did; that afterwards the Delaware and Bound Brook Railway Company became the owners of said unfinished embankments, abutments, piers and bridge, and that they did finish and complete the same; that afterwards in 1879 the said Delaware and Bound Brook Railway Company leased to the Philadelphia and Reading Railroad Company the roadbed constructed as aforesaid, and that since that

time the Philadelphia and Reading Railroad Company and its receivers have continued to hold, use, care for, repair, maintain and operate, under said lease, the said road, with said embankments, abutments, piers and bridge, and it, the said Philadelphia and Reading Railroad Company and its receivers, have continued to maintain the said embankments, abutments, piers and bridge over said river at the point aforesaid; and also that the Philadelphia and Reading Railroad Company and its receivers, in the operation of said railroad, have built up and constructed and maintained embankments of earth and stone on the south side of said river and on the west side of the embankments constructed by its lessors, and thereby continued to maintain the obstruction to the said old high-water channel; that by reason of the wrongful maintenance of said obstruction and the closing and cutting off of said old high-water channel and the wrongful rebuilding of said embankments and bridge in manner aforesaid, the said river has been prevented from flowing in the natural course as it formerly did, and has been dammed, penned up, forced back and diverted from its natural course so that it flows back and submerges the plaintiff's lands, causing him great damage, to the amount of $1,500.

The second count is substantially the same as the first, only adding that the defendants were notified and requested to abate the nuisance complained of.

To this declaration the second plea (which is demurred to) states, protesting that the defendants never constructed, erected or unlawfully maintained the said embankments, abutments, piers or bridge, or any or either of them or any part thereof; that prior to May 1st, 1879, the defendants had neither title to nor possession of the said embankments, abutments, piers or bridge or either of them or any part thereof, but that on that day the Philadelphia and Reading Railroad Company came into possession thereof by virtue of a lease from the Delaware and Bound Brook Railroad Company, for nine hundred and ninety-nine years, and that by virtue of that lease entered and took possession of the de-

mised premises, including said embankments, abutments, piers and bridge, and have ever since had possession thereof.

The plea then avers that the defendants have not built up, rebuilt, constructed or maintained any other abutments, embankments, piers and bridge at the said location than the embankments, abutments, piers and bridge which were so erected as complained of at the time of the entry and possession of the defendants under said lease, and that they have never built up, constructed or maintained the said embankments in such manner as to obstruct the said high-water channel in any other or different manner, or to any greater extent than the same was obstructed by said embankments, abutments, piers and bridge when the same came into the possession of said defendants under said lease, and that since the entry of said defendants under said lease the only use made of said embankments, abutments, piers and bridge has been the running of their railroad trains over the same.

Now here is a plain statement that the defendants have been in possession and use of the nuisance complained of since 1879 ; that they have used the same for the purpose for which it was erected, the running of their railroad trains over the same, and that they have not maintained it in such manner as to obstruct the said high-water channel in any other or different manner, or to any greater extent than the same was when said nuisance came into their possession. In other words, this is a plain admission that the defendants have built up, rebuilt and maintained the said embankments, or the nuisance complained of, so as to obstruct the said channel as it was obstructed by said nuisance when it came into their possession.

When the defendants admit, as they have here, that they have been in possession of these embankments, abutments, piers and bridge since 1893, and that they have used them for the purpose for which they were constructed—that is, the running of their railroad trains over the same—and claim that they have not maintained them so as to obstruct the flow of the water in any other manner or to any greater extent

than when they came into their possession, it is a clear admission that they have, during all of that period, been in the possession of these things which constituted the nuisance complained of, that they have used them for the purpose for which they were constructed, and that they have maintained them so as to obstruct the flow of the water in the same manner and to the same extent which they did when they came into their possession. They came into possession of a nuisance to the plaintiff erected by another party. They have used it for their own purposes, and have kept it up in the same condition it was when they took possession of it, rebuilt and maintained it.

There is no escaping this conclusion. It is as plain and clear as language can make it. And for this they are unquestionably responsible in law. This plea, therefore, sets up no defence to this action, but states facts which fix the defendants' liability beyond all question.

In other words, while this plea denies that the defendants originally constructed this nuisance, it admits that they have used and continued it in the same manner as originally constructed ever since it came into their possession, and does not deny the rebuilding and maintaining.

Does that constitute any defence to this action? We think clearly not.

This plea does not set up any want of a request by the plaintiff to abate the nuisance before action brought. If it did it would make no difference. But that question does not present itself in the consideration of this plea.

The only question is, whether a party coming into possession of a nuisance erected by another, and afterwards maintaining and rebuilding the same, continuing and using it for his own purposes, is liable for the damage caused by it to the injury of another. Our contention is that these defendants are in the same position as if they had originally built it.

The law is well settled upon this point, and on this question there are no conflicting authorities.

In the case of *Morris Canal and Banking Company* v.

*Ryerson*, 3 *Dutcher* 468, Chief Justice Green, in considering the question whether notice was necessary to be given to the defendants to abate a nuisance before bringing suit, goes over the question now presented so fully that I can do nothing better than to quote at considerable length what he says :

"The fourth error assigned is that the court instructed the jury that no notice was necessary to be given to the defendants to take down or repair said dam before the bringing of this suit, and that the plaintiff was entitled to recover damages which had accrued before the giving of such notice. The error is sought to be established upon the broad principle that an action cannot be maintained against a defendant for the continuance of a dam or other nuisance on his land, erected by another, unless he refuse to move it after request. The doctrine thus broadly stated is derived from *Penruddock's Case*, 5 *Co.* 100 (40 *Eliz.*), and received apparent countenance from other more modern authorities— *Winsmore* v. *Greenbank*, *Willes* 583 ; *Brent* v. *Haddon*, *Cro. Jac.* 555 (17 *Jac.* 1) ; 1 *Chit. Pl.* (7th ed.) 101, 423 ; 2 *Id.* 770, note *h ;* 2 *Saund. Pl. & Ev.* (2d ed.) 686. None of these cases, properly considered, support the doctrine contended for. The very reverse of the proposition is law. An action may be maintained against a party who continues a nuisance erected by another without a request to abate it. If the request to abate the nuisance be necessary to maintain the action, in all declarations for the continuance of a nuisance an averment of a request to abate it would be necessary. . But the precedents are otherwise, and there is no authority requiring it. In 1 *Chit. Pl.* 423 it is said that in a declaration against the mere continuer of a nuisance, it is advisable to state that he was requested to remove it. See, also, 1 *Chit. Pl.* 101. And in 2 *Chit. Pl.* 770, note *h*, it is said that if the action is not brought against the original erector of the nuisance, but against his feoffee, it may be necessary to allege a special request to the defendant to remove the nuisance. But the precedents contain no such averment. If the defendant continue the nuisance, though not erected by him, he is liable. Whether there be in fact a

continuance of the nuisance by the defendant, is a question of evidence. If the defendant, by any active participation of his, assent to the wrong—for instance, he repairs the dam, and holds back the water upon his neighbor for the use of his own mill or canal—he continues the nuisance, and no request to abate it is necessary. But if the defendant simply suffer a dam erected upon his land. by a former owner to remain without being used by him, it is no continuance of the nuisance, unless he be first requested to remove it. The position of the grantee of land having a nuisance erected upon it before he acquires title, and which is afterward suffered to remain, is precisely analogous to that of the owner of the land upon which a third party should wrongfully enter and erect a nuisance. If A should enter upon the land of B, and wrongfully, and without the consent and concurrence of the owner, erect a dam to the prejudice of C, B would not be liable for A's wrongful act in erecting the dam, nor for its continuance upon his land, until he was requested to abate it. And in such case, if the pleader, in a declaration against B for the nuisance, should aver that A erected the nuisance upon B's land, and B suffered it to remain, he must go further, and aver a request to B to abate the nuisance. The request is a material fact, essential to constitute the plaintiff's right of action. But if B should appropriate the dam, thus wrongfully erected by A, to his own use, and should maintain and continue the dam for his own purposes, such acts are a continuance of the nuisance, and no request to abate the nuisance is necessary, either to be averred in pleading or proved upon the trial. It is obvious, from this statement of the principle, that it may often become a material question upon the trial of a cause for a continuance of a nuisance, whether, in point of fact, the defendant did or did not continue the nuisance. And hence, as stated by Chitty, it may be advisable in all such cases (though not necessary) to aver a request to abate the nuisance before the action is brought. A regard to this distinction between the continuance of the nuisance by the defendant and his merely permitting it to remain, and between the legal

wrong and the facts necessary to constitute the wrong, will reconcile most, if not all, of the apparently conflicting authorities to be found in the books upon the subject."

The law as thus declared by the Chief Justice is the law of New Jersey to-day. There is not a single case where it has been questioned or criticised. As to whether there should be a request to abate before action brought, there is some conflict of authority, but there is no case anywhere which holds that a person who continues a nuisance erected by another is not himself personally liable for such continuance.

Numerous cases could be cited, but I deem it unnecessary to call attention to any others than the following : *Conhocton Stone Road* v. *Buffalo, New York and Erie Railroad Company*, 51 *N. Y.* 573 ; *Brown* v. *Cayuga and Susquehanna Railroad Co.*, 2 *Kern.* 492 ; 12 *N. Y.* 487 ; *Johnson* v. *Lewis*, 13 *Conn.* 303 ; *Tayl. Land. & T.*, § 206 ; *Wood Nuis.*, § 822.

The sixth plea, which is also demurred to, without setting out the lease to the Philadelphia and Reading Railroad Company, as in the second plea, simply states the defendants came into the possession of the railroad and embankments, abutments, piers and bridge in 1893 by virtue of certain decrees of the United States Circuit Court for the district of New Jersey, as receivers of the Philadelphia and Reading Railroad Company, and it then proceeds to state precisely as in the second plea that they have not since that time constructed any other embankments, &c., and have not maintained said embankments so as to obstruct the high-water channel in any other or different manner, or to any greater extent than the same was obstructed when said embankments came into their possession, and that the only use they have made of them has been the running of their railroad trains over the same ; and then it concludes by stating that the plaintiff has brought this suit against them as receivers, without first obtaining permission of the court which appointed them such receivers.

Now it is plain that this plea sets up two distinct matters of defence having no relation to each other whatever.

The first defence set out is, that they have not built up any

other abutments, &c.; that they have only used them for running their railroad trains over them, and that they have not maintained them so as to obstruct the water in any other or different manner or to any greater extent than when they came into their possession.

The second defence in this plea is, that the suit was brought without the permission of the court which appointed them receivers.

If this second defence could avail them, then it was entirely unnecessary to state whether they had or had not done anything to obstruct the flow of this water. If the plaintiff has no right to commence his suit without the permission of the United States Circuit Court, then his having done so, after setting out how they were appointed receivers, would be all that need be stated. This is simply a plea in abatement, and does not go to the merits of the action. It is in form a plea in bar, although in substance a plea in abatement. If regarded as a plea in bar it is clearly defective because it does not go to the merits of the action. If regarded as a plea in abatement then it has been waived by the other pleas which have been pleaded in bar. A plea in bar and a plea in abatement cannot be pleaded to the same action. The court will not permit a defendant to plead at the same time in abatement and in bar to the same matter. 1 *Chit. Pl.* 458.

As to the first matter of defence set up in this plea, what was submitted in reference to the second plea is equally applicable to this one, and it would be simply a repetition and entirely superfluous to add anything further.

These two pleas, then, the second and the sixth, are clearly defective for the reasons stated, and the demurrers to them should be sustained.

For the defendants, *James J. Bergen.*

Among other pleas of the defendant is one which sets up that they are tenants of the Delaware and Bound Brook Railroad Company, and that the only use they make of the embankment and bridge is the running of railroad trains along the top of the embankment and across the bridge.

The demurrer questions the legal sufficiency of this plea.

The question intended to be raised by this plea is, can a tenant be held liable for damages arising from a faulty structure on the demised premises, impressed with the fault when it came into his possession, which he in no way adds to, and where the use he makes of it does not produce or contribute to the injury complained of?

The situation of a tenant who has no right to demolish the structure, and who might be held liable for waste if he did so, is entirely different from that of an owner coming into possession by purchase after construction; he has the right to abate—the tenant, if he did so, could not justify.

In the case made by the plea now under consideration there is an owner by whom the structure alleged to be a nuisance was erected; the tenant by no act whatever continues the nuisance, nor does the use made of it produce the injury complained of. It differs from that of a mill-dam, where the tenant uses the water, and by such use lowers and raises the water, which is the active agent in creating a nuisance. The dam itself is no nuisance, but the water which is held back for the tenant's use does the damage.

We insist that in a case like the one under consideration the remedy is against the owner only, and that the tenant is not liable unless the use he makes of the property produces or contributes to the injury.

I am aware that it is claimed that the plaintiff has the election to sue either landlord or tenant for injuries arising from a nuisance existing on the demised premises, but do not think that the rule applies where the tenant coming into possession would be required to destroy the demised property in order to abate the nuisance, when the use made of the structure by the tenant is not an injury to the plaintiff.

The principal case relied upon in support of the right to sue either is that of *Roswell* v. *Prior*, reported in 2 *Salk.* 460, and in 12 *Mod.* 636. The report in Salkeld is very brief, being merely a reporter's synopsis, while that in Modern is quite full, giving the argument of counsel and the opinion of the

court, from which it appears that the contest made on the argument was over the right to maintain an action against the erector of the nuisance for damages accruing after the premises had been demised, the defendant claiming that the right was confined to the occupier.

The opinion of the court argues only this question, saying among other things " that it is a fundamental principle in law and reason that he that does the first wrong shall answer for all consequential damages," and it was used as an illustration that if one takes another prisoner by wrong and turns him over to another officer who detains him, the first taker shall answer for all consequential damages.

The notion that this case holds that either landlord or tenant may be held liable arises, it seems to me, from a note following the case in 12 Modern, in which it is said Chief Justice Holt expressed himself as not being satisfied with the case of *Rippon* v. *Bowles*, 2 *Cro.* 373, where it was held that it would be waste in the lessee to abate, and therefore an action would not lie against him. It was an expression of an opinion by Mr. Justice Holt, not accepted by the court so far as the main opinion goes, and ought not to be held as overruling the Rippon case.

Reason and argument are against the proposition to hold a tenant liable for consequential damages arising from a structure which he did not erect, and which he cannot abate without committing a waste that he could not justify to the lessor, when the use for which the property was demised does not and was not intended to contribute to the injury, and where the use made of it in no way changes the situation or adds to the objectionable features, such as using a cesspool or drawing water from a pipe, &c.

The constant trend of judicial opinion has been to hold liable the landlord in cases of this kind. I have not been able to discover a reported case where it was sought to hold the tenant for a nuisance resulting alone from a structure in existence when the tenant took possession ; every case coming under my observation relates to an effort made to excuse the

landlord and throw the liability on the tenant, and the only foundation for the claim that the plaintiff might sue either, is the expression of Mr. Justice Holt in Roswell *v.* Prior.

The following are a few of the cases relating to this matter to which I refer :

1. *Ingwersen* v. *Rankin,* 18 *Vroom* 18.    The court referring to the Roswell-Prior case says that " it was held that the action would lie against either landlord or tenant, at plaintiff's election." As the present question was not under consideration, the real question being whether the landlord could be held when the tenant was in possession, the landlord being in fault, the foregoing quotation was not the expression of a judicial determination that a tenant could be held where his act did not establish or continue the nuisance.

2. *Durant* v. *Palmer,* 5 *Dutcher* 544.    Here it was held that the tenant alone was liable for a nuisance resulting from his own act or negligence in using the premises, but for a nuisance resulting from the structure of the building the owner was liable.

3. *Swords* v. *Edgar,* 59 *N. Y.* 28.    It was held that the occupants of a pier were primarily charged to maintain it in good condition, but where it was leased, and at the time of delivery of possession it was defective, and in consequence thereof, while in possession of the lessee, an injury happened, the lessee is liable.    This case expressed no opinion with regard to the option to sue either.

4. *Wagoner* v. *Jermaine,* 3 *Den.* 366.    It was held that where one erects a nuisance on his own land by constructing a watercourse to the injury of the land of another, and then conveys the premises with warranty, he remains liable for the damage occasioned by the continuance of the nuisance subsequent to the conveyance.    This case refers to the Roswell-Prior case, but makes no reference to the right of the plaintiff to sue either.

5. *Fish* v. *Dodge,* 4 *Den.* 311.    It was held that one who erects a nuisance on land is liable for the continuance, though he has demised the premises to another, and that he who demises the property for the purpose of having it used in such

a way as must prove offensive to another, may himself be treated as the author of the mischief. This case makes no reference to the plaintiff's right to sue the tenant.

It was held by the Supreme Court of Pennsylvania for the eastern district, in January, 1895, in the case of Patrick Kearney *v.* Central Railroad Company of New Jersey, that the Central company, being the tenant of the Scranton and Wilkesbarre Railway Company, was not liable, and that the suit should have been brought against the Scranton and Wilkesbarre Railway Company. That was a suit brought for flooding the plaintiff's land, caused by the narrowing of the bed of the Lackawanna river in the construction of the railway by the Scranton company, the court saying there is no claim that the injury to the plaintiff's land was caused in any degree whatever by the operation of the road by the lessee. The case relates exclusively to the original construction of the railroad and bridge. *Kearney* v. *Central Railroad Company of New Jersey,* 31 *Atl.. Rep.* 637; 161 *Pa.* 362.

In *Kanauss* v. *Brau,* 107 *Pa. St.* 88, on page 89, Mr. Justice Gordon says : " The nuisance was in existence before the lessee went into possession, and it was not his business, unless for his own convenience, to remove it; whether he might have called upon his landlord or not to put the sewer into proper condition for use, is not a proper question, for that was a matter with themselves, and not one that interested third persons. But that, as to third persons, the tenant was not obliged to abate a nuisance created by his landlord, is a proposition too plain for discussion. If the lessee contributed to the nuisance by the use of the vault and drain, he would, no doubt, be liable."

The case of *Morris Canal Company* v. *Ryerson,* 3 *Dutcher* 457, is relied on by the plaintiff as sustaining his position, but a discussion of that case, to be found in 64 *Fed. Rep.* 684, by Mr. Justice Dallas, in the United States Circuit Court of Appeals, will show that the Ryerson case does not maintain the doctrine contended for, the court saying, on page 685 : " In short, the defendant's liability was maintained

(irrespective of the omission to repair, which was the actual basis of the decision) solely upon the ground of continuance of nuisance. And, as we have before said, the only question is as to what was in contemplation as evidencing or constituting a continuance. If it was intended to affirm that any use whatever of a structure which had been wrongfully erected, amounts to a continuance of the wrong, even though the acts of user are not themselves injurious, and do not newly cause or add to the original injury, then, indeed, this opinion would conflict with the uniform current of authority, but we do not think it is fairly subject to such interpretation. It contains this defining language: ' Whether there be in fact a continuance of the nuisance by the defendant, is a question of evidence; if the defendant, by any active participation of his, assent to the wrong, he continues the nuisance.' There must be assent to the wrong, and to establish this there must be evidence of participation in the wrong. Use of the thing complained of for a purpose entirely apart from the hurt it occasions is not enough ; such use is with respect to the injury, passive and not active ; it involves no participation in, no adoption or partaking of the wrong committed by the creator of the injurious thing."

A careful reading of this case in 64 *Fed. Rep.* demonstrates the correctness of the proposition I am contending for, and shows that it is not contrary to the law of our state.

In the case of *Staples* v. *Spring*, 10 *Mass.* 74, the same proposition is recognized, the court saying : " In short, the continuance and every use of that which is in its erection and use a nuisance, is a new nuisance for which the injured party has a remedy for his damages." The case limited the liability of a subsequent occupier to damages to a case where the erection and use is a nuisance—that is, the use as well as the erection must contribute to the damage.

In the case of *Fetner* v. *Toledo, St. Louis, &c., Railroad Co.*, 29 *Ill. App.* 250, the court having under consideration the question with reference to the necessity of giving notice to the tenant to abate before action brought, in its opinion, re-

ferring to *Groff* v. *Aukenbrandt*, 19 *Id.* 150, quoting says: "Cases of this kind are to be distinguished from those where the nuisance consists in the use of the erection, and every act of using it is a fresh nuisance, as the operating of manufactories, the using of a pipe that wrongfully takes the water from another, &c."

I also quote from *Rippon* v. *Bowles*, 2 *Cro.* 373, above cited: "Although an action lies against him who erects it, yet against the defendant who is only for years, and inhabits only therein, and hath committed no other act to prejudice the plaintiff, and who hath no authority to abate it (and if he should, would be chargeable in an action of waste), the action is not maintainable against him. It is not like the Lady Brown case for the turning of the cock, but here it is only inhabitancy, which is not any nuisance."

The liability of a tenant to damages ought to rest only on the power to abate after notice; but the tenant in this case has no power to abate without committing waste, and the owner who erected the structure and demised to the present tenant ought alone to be held liable for all damages which result from his faulty structure. The tenant can only be held liable when he continues the nuisance.

The plea denies the continuance, and shows that the only use made by this tenant is to run its railroad trains over the top of the embankment and across the bridge.

The opinion of the court was delivered by

GUMMERE, J. The declaration in the cause alleges that about the year 1874, the Delaware and Bound Brook Railroad Company, a corporation of this state, constructed a railroad embankment and bridge in, over and across the Raritan river, in the county of Somerset; that, in the year 1879, it leased its road, including the said embankment and bridge, to the Philadelphia and Reading Railroad Company, and that the latter company and its receivers, the defendants in this cause, have ever since been in the possession of said embank-

ment and bridge, and have used, rebuilt and maintained the same. The declaration then charges that, by reason of the construction of said embankment and bridge, the waters of said river are penned up and forced back upon the lands of the plaintiff, thereby rendering them boggy and valueless.

The defendants have filed several pleas to this declaration, and to two of them the plaintiff has demurred.

The first of these pleas sets out that the Philadelphia and Reading Railroad Company came into the possession of said embankment and bridge by virtue of a certain lease made to it by the Delaware and Bound Brook Railroad Company, whereby the latter company leased to the former for a term of nine hundred and ninety-nine years its railroad and appurtenances, of which the said embankment and bridge are a part. The defendants then aver that neither the said Philadelphia and Reading Railroad Company nor they, its receivers, have ever built up, constructed or maintained said embankment and bridge in such manner as to obstruct the flow of said river in any other or different manner, or to any greater extent, than the same was obstructed by said embankment and bridge when the same came into the possession of said company and its receivers under said lease; and that the only use which said company or its receivers have made of said embankment and bridge has been the running of its and their railroad trains over them.

It will be observed that, by this plea, the defendants do not deny that they and the company of which they are receivers have built up, constructed and maintained said embankment and bridge; they merely deny that they have done so in such a manner as to obstruct the flow of the river in any other manner or to any greater extent than the same was obstructed by the said embankment and bridge when those structures came into their possession. The question, therefore, which is presented for decision is whether a tenant, under a lease for a term of nine hundred and ninety-nine years, becomes responsible for damages caused by the existence of a structure upon the demised premises which is a nuisance, when such structure

was put there by his lessor prior to the making of the lease, and when the tenant simply maintains it in the condition in which it came to him, and rebuilds it when it falls out of repair.

The answer to this question must depend, it seems to me, upon the estate which the tenant has by virtue of his lease. The law imposes upon an ordinary tenant for years the duty of keeping the demised premises in repair, and of returning them to his landlord at the end of his term in approximately the same condition in which he received them. If he fails to do this, and suffers the estate to go to decay for want of necessary repairs the law makes him liable to his landlord as for a permissive waste. So, too, if he does any act which injures the inheritance his lessor may recover against him as for a voluntary waste. *Moore* ads. *Townshend,* 4 *Vroom* 284; *Newbold* v. *Brown,* 15 *Id.* 266. This being so, it follows as a necessary result that a lessee is under no obligation to a third person either to tear down or to suffer to fall into decay a structure upon the demised premises which, in the state in which it was at the commencement of the term, was a nuisance to such person. The law does not impose upon anyone the duty of performing an act for the benefit of one person which will necessarily subject him to liability at the hands of another.

In those cases in which the nuisance exists at the time of the creation of the estate for years, and the lessee does nothing except to maintain the demised premises in the condition in which he received them, the person who suffers from the nuisance must look to the landlord, and not to the tenant, for redress.

It is urged that this view is opposed to that taken by this court in the case of *Morris Canal and Banking Co.* v. *Ryerson,* 3 *Dutcher* 457; but this contention is based upon a misapprehension of what was really decided by that case. The situation was this: The Morris Canal and Banking Company had purchased a tract of land, upon which there was a dam which caused the waters of the Pompton river to flow back

upon and submerge the lands of Ryerson, and the latter brought his suit to recover for the damages caused by the back-water. The matter to be determined was whether *the owner* of lands, upon which there was a structure which had been erected to the nuisance of another, prior to his acquiring title, was liable for the damage caused thereby unless he had been first requested to remove it; and this court held that if *the owner* of lands upon which such a structure had been erected continues the nuisance, and uses the structure, the party injured has a remedy against him without first requesting an abatement thereof, but that if such *owner* simply suffers the structure to remain, without using it, such action on his part is not a continuance of the nuisance unless there be a request to remove it.

Clearly this decision affords no ground for the contention that *a tenant for years* becomes responsible in damages for maintaining and using a structure upon the demised premises, which has been erected thereon, to the nuisance of a third person, prior to the beginning of his term.

But do the defendants in this case, and the company of which they are receivers, occupy the position of tenants for years under their lease? By its provisions they become the possessors of the railroad and appurtenances of the lessor company (including the embankment and bridge referred to in the pleadings) for a period of nine hundred and ninety-nine years, a term which is, for all practical purposes, perpetual. Such a lease, as was said by Mr. Justice Van Syckel, speaking for the Court of Errors and Appeals, in *Black* v. *Delaware and Raritan Canal Co.*, 9 C. E. Gr. 455, 465, is substantially a conveyance in fee, and, for this reason, the lessees, in determining the measure of their responsibility in maintaining a nuisance upon the premises conveyed to them by such an instrument, should be considered as owners rather than as tenants for years. Now, as owners, they are responsible to a third person for damages sustained by him, by reason of the existence upon their lands of a structure erected by their predecessor in title, to his nuisance, provided they con-

tinue the same. *Morris Canal and Banking Co.* v. *Ryerson, supra.* That these defendants have actively continued the nuisance complained of, they themselves admit in the plea. The declaration charges them with having done so by building up, constructing and maintaining the embankment and bridge which constitute the nuisance, and they, in their plea, merely deny that they have done so in such manner as to obstruct the flow of water in any different manner, or to any greater extent, than the same was obstructed by the said embankment and bridge when the same came into their possession.

The result is that the matters set up in this plea constitute no defence to the plaintiff's action.

The second plea demurred to sets up as a defence that the defendants were appointed receivers of the Philadelphia and Reading Railroad Company by the United States Circuit Court for the district of New Jersey, and that the plaintiff brought his suit against them as receivers without first obtaining leave of said court for that purpose.

It was held by the United States Supreme Court, in *Barton* v. *Barbour, Receiver,* 104 *U. S.* 126, that no suit can be maintained against the receiver of a railroad company who is, by order of court, conducting the business of a common carrier, without leave of the court by which he was appointed, and that the failure to acquire such leave might be set up by plea as a bar to the maintaining of an action so brought. Mr. Justice Miller, however, dissented from the view of the majority of the court, being of opinion that the failure to obtain leave to bring a suit could not be pleaded as a bar to its maintenance; and that the remedy of the defendant receiver was to apply to the court which appointed him for an injunction to restrain its prosecution.

But in passing upon the validity of this plea it is not necessary for us either to approve or disapprove the doctrine established by Barton *v.* Barbour, that failure to obtain leave to sue can be pleaded as a defence, for since the decision of that case congress, by an act passed March 3d, 1887 (24 *U. S. Stat., ch.* 373, *p.* 552, § 3), has provided that " every receiver

or manager of any property, appointed by any court of the United States, may be sued in respect of any act or transaction of his in carrying on the business connected with such property, without the previous leave of the court in which such receiver or manager was appointed." This statute has been construed by the Supreme Court of the United States in *McNulta* v. *Lochridge,* 141 *U. S.* 327, and it is there held that it was not intended by the words "any act or transaction of his" to limit the right to sue to cases where the cause of action arose from the conduct of the receiver himself or his agents, but that with respect to the question of liability he stands in the place of the corporation.

It is manifest, therefore, that by virtue of the provision of the statute referred to, as construed in McNulta *v.* Lochridge, a party may sue a receiver without permission first obtained not only for an injury caused by his own act, but for those which result from acts of the corporation done before his appointment.

In addition to this, the declaration in this case alleges that the nuisance which the plaintiff complains of has been continued by the defendants since their appointment as receivers by the rebuilding, maintaining and using of the embankment mentioned therein, and the plaintiff was therefore, by the very words of the act of congress, entitled to institute this suit without first obtaining leave of the United States Circuit Court.

The plaintiff is entitled to judgment on his demurrer, and the Circuit Court is so advised.