CHARLOTTE COGLIATI, PLAINTIFF-RESPONDENT, v. ECCO HIGH FREQUENCY CORP., A NEW JERSEY CORPORATION, AND EMIL R. CAPITA, DEFENDANTS-APPELLANTS, AND BERNARD OSTER, DEFENDANT AND THIRD-PARTY PLAINTIFF-APPELLANT AND CROSS-RESPONDENT, v. INVESTORS INSURANCE COMPANY OF AMERICA, THIRD-PARTY DEFENDANT-RESPONDENT AND CROSS-APPELLANT.

Argued September 29, 1982—Decided February 8, 1983.

*Joseph S. Nester* argued the cause for appellants (*Russo, Tumulty & Nester,* attorneys).

*Arthur D. Pajonk* argued the cause for appellant and cross-respondent (*Pajonk & Pajonk,* attorneys).

*Milton D. Liebowitz* argued the cause for respondent and cross-appellant (*Liebowitz, Liebowitz & Clark,* attorneys).

*Melvin R. Solomon* argued the cause for respondent (*Parsekian & Solomon,* attorneys).

The opinion of the Court was delivered by

SCHREIBER, J.

We are called upon today to determine the liability of predecessors in title of commercial properties for injuries suffered on public sidewalks. Plaintiff, Charlotte Cogliati, began this action for damages for personal injuries that she suffered as a result of a fall on the public sidewalk in front of the premises designated 9223–9243 Kennedy Boulevard, North Bergen, New Jersey. She alleged that the sidewalk was in a dangerous condition due to its improper construction and maintenance. The defendants were Ecco High Frequency Corp., the owner of the property, Emil

Capita, its principal stockholder, and Bernard Oster, Ecco's predecessor in title. Ecco filed a cross-claim against Oster for contribution in accordance with the Comparative Negligence Act, *N.J.S.A.* 2A:15–5.1 *et seq.*, and the Joint Tortfeasors Contribution Law, *N.J.S.A.* 2A:53A–1 *et seq.* Oster joined as third party defendant Investors Insurance Company of America (Investors), which had insured Oster. Investors had refused to defend the suit on behalf of Oster and disclaimed coverage because the accident occurred after Oster had conveyed title.

The issues were resolved when the trial court granted Oster's motion for summary judgment and subsequently granted Ecco's and Capita's motion for summary judgment. Investors prevailed on its motion for summary judgment because its insured was not liable. The plaintiff appealed and the Appellate Division reversed. 181 *N.J.Super.* 579 (1981). We granted petitions for certification filed on behalf of defendants Oster, Investors, Ecco and Capita. 89 *N.J.* 441, 442 (1982); 91 *N.J.* 286 (1982).

The respective motions for summary judgment were decided on the basis of depositions of the plaintiff and defendants Oster and Capita, an affidavit of an engineer, and an affidavit of an insurance broker. The following facts, viewed favorably for the plaintiff, may be adduced from that record.

At about 6:00 p.m., on November 8, 1977 plaintiff, Charlotte Cogliati, was walking on the public sidewalk on Kennedy Boulevard, North Bergen. While walking by the commercial building owned by Ecco, she tripped on the broken sidewalk and fractured her hip. She described the sidewalk as "all cracked up to pieces" and asserted "the whole sidewalk was caving in." George Marr, an engineer, examined the sidewalk on February 4, 1980 and found that it had been completely repaired and resurfaced since the accident. He also examined ten photographs of the walk taken in April 1978. It was his opinion that the conditions relating to cracks in and raised portions of the sidewalk were due to improper and inadequate subsoil preparations. He also averred that the pictures depicted a condition

that had existed for a substantial period of time before the accident.

When defendant Oster purchased the property in 1973,[1] there was an unoccupied building, formerly a supermarket, on it. The premises remained vacant until the property was conveyed to Ecco on July 26, 1977. During Oster's ownership nothing was done to the sidewalk. Capita, Ecco's president and principal stockholder, examined the building and observed the sidewalk before Ecco bought the property. Ecco refinished the sidewalk in the early part of 1979. There had been a liability insurance policy with Investors, but on closing title the policy was canceled and Investors returned a part of the annual premium. The accident occurred more than three months after Ecco took title.

The trial court in an oral opinion began with the premise that an abutting owner is not liable for the condition of a sidewalk caused by the action of the elements or by wear and tear incident to public use. It stated that an owner could be liable only for his negligent construction or repair of the sidewalk or that of his predecessor. The trial court also noted that the plaintiff must show the proper standard of construction at the time the sidewalk was constructed or repaired and the deviation from that standard. The court found no evidence from which it could infer that the defendants Ecco or Oster either repaired the sidewalk or repaired it negligently. In a letter opinion the trial court found in favor of Investors because its insured Oster was not liable.

Pending the appeal to the Appellate Division, we decided *Stewart v. 104 Wallace Street, Inc.*, 87 *N.J.* 146 (1981), holding that commercial landowners are responsible for maintaining the

---

[1]According to Mr. Oster's depositions, the property was purchased by Cross State Developers Corporation. He was an officer and one of the shareholders of that enterprise. There is some question as to what grantee the deed recited. None of the parties has raised an issue concerning the identity of the owner on this appeal. Investors' pleadings stated that Oster was the named insured in its policy.

public sidewalks abutting their property in reasonably good
condition and are liable to pedestrians injured as a result of
their failure to do so. *Id.* at 157. The Appellate Division held
that *Stewart* should be applied retrospectively and therefore the
summary judgments in favor of Ecco and Capita against the
plaintiff could not stand. The Court concluded that *Stewart*
should be applied to the predecessor in title Oster, holding that a
predecessor in title would remain liable for a reasonable period
of time after the sale and conveyance for failure to maintain the
public sidewalk. Lastly, the Appellate Division observed that
Investors was let out only because Oster was not liable. It
observed that "[t]he legal question of Investors' continuing
obligation to Oster, assuming Oster's liability to plaintiff, de-
pends on factual determinations and construction of policy lan-
guage which in the first instance should be made by the trial
court." 181 *N.J.Super.* at 585.

There are two major issues before us. One concerns the duty
owed by a predecessor in title of a commercial property to a
pedestrian who is injured on a public sidewalk because of a
defective condition that had existed during the predecessor's
ownership and control. The second involves the retrospectivity
of *Stewart* to the owner and to predecessors in title.

I

Our case law has been unclear as to the obligation of a
predecessor in title of realty after conveying title with respect
to a defective public sidewalk abutting the premises.[2] Three
rules have evolved. One general rule has been that a seller of
realty is not subject to liability for bodily injury suffered by
third persons arising after the purchaser has taken possession,
even though the seller may have been responsible for creation of
the dangerous condition. *McQuillan v. Clark Thread Co.,* 12

---

[2] Our discussion is limited to the situation where the rights of the public are
involved on the public right-of-way.

*N.J.Misc.* 409, 172 *A.* 370 (Sup.Ct.1934). Thus the seller who would have been responsible if the pedestrian had been injured during the seller's possession avoids liability if the property had been transferred the day before the accident. A second rule provides that the predecessor in title remains liable until the dangerous condition is corrected. *See Garvey v. Public Service Co-ordinated Transport,* 115 *N.J.L.* 280 (E. & A. 1935). A third rule states that the predecessor in title remains responsible for a reasonable period of time after the conveyance. *See Sarnicandro v. Lake Developers, Inc.,* 55 *N.J.Super.* 475 (App.Div.1959) (dictum).

The policy underlying the first rule was that the seller no longer had possession of the premises and therefore his duty had been extinguished. He had no right to enter and repair the walk, for the property was no longer his. It was the buyer who was now in control and accordingly it was his obligation to remedy the condition. *McQuillan v. Clark Thread Co., supra.* There the seller was held not liable for a defective sidewalk condition caused by him where the accident occurred after he had sold and conveyed the property. Justice Oliphant summarized the rule as follows:

> Where there has been a transmutation of title and possession, the former owner has no control over the premises and he does not have the right of possession nor the right of entry. Any attempt to make entry on his part for whatever purpose would put him in the category of a trespasser. Having divested himself of all rights in regard to the property, he owes no duty with respect to the condition of the premises. Therefore, the negligent condition which may exist on the premises to the injury of any member of the public, whether he be a licensee or invitee, is not actionable as against the former owner.[3] [12 *N.J.Misc.* at 411–12]

Where, however, control was retained, the seller's responsibility continued. In *East Jersey Water Co. v. Bigelow,* 60 *N.J.L.*

---

[3]The converse of this rule is that the grantee would be responsible. *See Braelow v. Klein,* 100 *N.J.L.* 156 (E. & A. 1924) (sidewalk improperly constructed by predecessor in title, defendant present owner held chargeable with maintaining nuisance caused by improper construction).

201 (E. & A. 1897), the East Jersey Water Co. constructed dams and reservoirs on the Pequannock River that diverted the flow of water and interfered with operation of the plaintiff's sawmill. The Water Company sold the dams and reservoirs to the City of Newark, but under its agreement the Water Company maintained and controlled the works and had the right to divert water, at the Newark city limits, for its own use. The Court held the Water Company's duty remained because it not only had constructed the nuisance but also had a contractual obligation that was tantamount to continuing the nuisance. It reached this conclusion on the rationale that one who creates a nuisance and then conveys title to another, covenanting with the grantee for quiet enjoyment and undertaking the duty to maintain the structure, remains liable for the nuisance. The crux of this position is the seller's continuing control over the property.

The relationship of a predecessor in title and an owner to a third party is analogous to that of an independent contractor and an owner to a third party. The independent contractor's duty to a third person, injured because of a dangerous condition created by the independent contractor, terminated when the work was completed and accepted. *Miller v. Davis & Averill, Inc.,* 137 *N.J.L.* 671 (E. & A. 1948). The reason for that rule was, as in the case of the realty seller, that since possession and control were exclusively in the owner, the independent contractor had no authority or permission to rectify the condition on property not belonging to him. Since the contractor could not lawfully effect a remedy, his duty had terminated.

The effect of the landlord-tenant relationship on liability to the injured pedestrian likewise depended on whether the landlord had retained any measure of control. Where the owner had erected a nuisance in the public way, he was liable as the "author of the mischief" to the injured party. *Pirozzi v. Acme Holding Co.,* 5 *N.J.* 178 (1950). However, the owner's continued liability after demise of the premises depended on whether that

owner, as landowner, had retained any measure of control. *Id.* at 188.[4]

This line of cases applying the first rule, holding that the creator of the sidewalk defect is no longer liable after it ceases to have a measure of control, conflicts with decisions applying the second rule, holding that exposure to liability continues until the dangerous condition has been eliminated. In *Garvey v. Public Serv. Co-ordinated Transp., supra,* the Court of Errors and Appeals set aside a nonsuit where the plaintiff had fallen in a hole left by the defendant electric company after it had removed a wooden pole from the sidewalk. The evidence indicated that the pole had been removed between one and three years before the accident. Liability was found sustainable on the theory that the defendant had created a nuisance in the public highway. In referring to the defense that the creator could not abate the nuisance without being guilty of a trespass, the Court quoted approvingly this language in *Thompson v. Gibson,* 151 *Eng.Rep.* 845, 847 (Ex.1841):

> But that is a consequence of their own original wrong; and they cannot be permitted to excuse themselves from paying damages for the injury it causes, by shewing their inability to remove it, without exposing themselves to another action.

*See Garvey,* 115 *N.J.L.* at 285.

In *Lindemann v. S.S. Kresge Co.,* 122 *N.J.L.* 326 (Sup.Ct.1939), the plaintiff was injured in 1935 when he fell on a public sidewalk because of a dangerous condition created by the defendant in 1927 or 1928. The defendant surrendered the premises in 1933 when its lease terminated. The Court reversed a nonsuit and stated:

> If, as contended, defendant had created a nuisance upon the sidewalk, its subsequent surrender of the premises, with the nuisance unabated, did not absolve it from responsibility for the injuries suffered by the plaintiff, if they were the proximate result thereof. The *locus* was a public highway. [122 *N.J.L.* at 327]

---

[4] *Pirozzi* contains some language to the effect that the owner would remain liable irrespective of whether control was retained, because the nuisance should have been abated before the owner parted with control. 5 *N.J.* at 188.

The *Lindemann* opinion was cited with approval by the Court of Errors and Appeals in *Fredericks v. Town of Dover,* 125 *N.J.L.* 288, 291 (1940), in which a municipality was held responsible for injuries caused by an improperly installed metal cover over a gutter, though the street had been under the exclusive maintenance of the county for more than ten years before the accident. F. Harper & F. James, *Law of Torts* § 27.21, at 1532 (1956), strongly advocated that:

[T]here is no particularly good reason why his [vendor of realty] potential liability should stop either when he transfers possession of that land or when his successor in occupancy becomes liable either because of his possession or because of his fault in negligently omitting to repair the danger. In such a case, the vendor's wrong is not the breach of a duty imposed upon him by reason of possession, as such .... The gist of the wrong is simply affirmative unreasonably dangerous conduct and his liability should have no limits except those which are generally imposed in such cases. [footnote omitted]

Some legal scholars have advocated a middle ground between the principles that a vendor has no liability after he transfers the property and that a vendor's liability continues after the transfer until the condition on the public sidewalk is remedied. They have espoused a third rule, that the vendor should remain liable for a reasonable period of time. *E.g.,* Cowan, "Reform in the Law of Torts," 14 *Rutgers L.Rev.* 356, 368–69 (1960); *see W. Prosser, Law of Torts,* § 64, at 413 (4th ed. 1971). This proposition received its first stamp of approval in our courts in dictum in *Sarnicandro v. Lake Developers, Inc.,* 55 *N.J.Super.* 475 (App.Div.1959).

In *Sarnicandro,* the plaintiff sued the present owner as well as the builder of a house for personal injuries when she fell in March 1958 on outside steps leading to the basement. The owner had taken title in March 1956. The Appellate Division affirmed a summary judgment in favor of the builder. In its discussion the court referred to a vendor's liability where it has created a situation interfering with the rights of the public and stated that "the vendor has been held liable on the theory of a public or a private nuisance, at least for a reasonable length of time after he has parted with possession." 55 *N.J.Super.* at 481.

No case law was cited supporting this proposition.[5]  The *Sarni-candro* dictum was followed in *Cavanaugh v. Pappas*, 91 *N.J.Super.* 597 (Union County Ct. 1966).  There the plaintiff fell on a sidewalk allegedly due to faulty repair.  The property had been conveyed by the defendant five days before.  The defendant's motion for judgment on the pleadings was denied.  The trial court, after observing the conflict between the propositions in *Sarnicandro* and *McQuillan*, opted for the former.  It opined that holding the vendor liable is "more logical and equitable." 91 *N.J.Super.* at 604.

> After all, one should not be allowed to create a dangerous condition on property which could cause damage to others and then escape liability for such damages simply because he sells the property on which the dangerous condition exists. As the maker of the condition he should be liable in part, if not in whole, for his act. [*Id.*]

*Sarnicandro* was also followed in *Narsh v. Zirbser Brothers, Inc.*, 111 *N.J.Super.* 203 (App.Div.1970), in which the court expressed with approval the thought that the vendor's liability continues until the vendee has had reasonable opportunity to discover the condition and to take appropriate precautions.

█ We believe the preferable doctrine is that the predecessor in title who has created or maintained the dangerous sidewalk condition should remain liable to the injured pedestrian irrespective of the fact that the property has been conveyed.  Since he is factually responsible, at least in part, for the hazard, he should not be immune from legal responsibility.  He of course could have fixed the sidewalk during his ownership.  Moreover, it is unrealistic to say that after the sale the predecessor could not have remedied the wrong, for it is extremely unlikely that the subsequent owner would not grant permission to rebuild or repair the sidewalk.  The notion that the present owner's obliga-

---

[5]Although there are references to *Sarnicandro* 's pronouncements in several decisions, *e.g.*, *Hut v. Antonio v. Guth*, 95 *N.J.Super.* 62, 66 (Law Div.1967), Justice Clifford in *O'Connor v. Abraham Altus & Harrison Park, Inc.*, 67 *N.J.* 106, 114 n. 4 (1975), noted that there was no direct authority for the proposition that a seller who created the dangerous condition was liable for an accident occurring after the conveyance.

tion should relieve the predecessor and thereby terminate the predecessor's liability is not compelling. The party basically at fault should not be able to elude accountability to the injured pedestrian.

Continuance of liability accords with other analogous developments in tort law. In *Totten v. Gruzen,* 52 *N.J.* 202 (1968), we overruled *Miller v. Davis & Averill, Inc., supra,* and held that an independent contractor who constructed part of an apartment house, improperly creating a dangerous condition, remained responsible long after the work had been completed and accepted by the owner. Similarly, the framework of product liability law, imposing on a manufacturer a duty that survives sale of his product, would seem in many ways comparable to the concept of liability with respect to dangerous sidewalk conditions. Creating a dangerous sidewalk, which by its nature the public is invited to use, is not functionally different from placing an unsafe product in the stream of commerce.

It may seem somewhat unfair to hold a party liable for a sidewalk condition for a long period of time after the property has been sold. *Prosser, supra,* at 414 comments that there should be some time limit upon the duration of potential liability. "A corporation, still in existence, can scarcely be required to pay for damages which occur a century after the grant [sale]." *Id.* at 414. We note in passing *N.J.S.A.* 2A:14–1.1, which generally prohibits an action "for bodily injury or wrongful death, arising out of the defective and unsafe condition of an improvement to real property . . . more than 10 years after the performance or furnishing of [the design, planning, supervision of construction or construction of such improvement] . . . ." In *Rosenberg v. Town of North Bergen,* 61 *N.J.* 190 (1972), this statute was held applicable to a public highway. We need not and do not pass upon the applicability of this statute to predecessors in title of public sidewalks, whether such predecessors constructed the sidewalk improperly or only maintained the

defective walk. It may well be that the Legislature will clarify this matter in view of our holdings in this opinion.

█ Insofar as the injured party is concerned, the predecessor in title is an additional possible tortfeasor. The relationship between the predecessor in title and the owner will vary depending on their contractual relationship. First, there may be a contractual undertaking between them under which the buyer has agreed to accept the ultimate responsibility. This can be reflected in the purchase price and may possibly be implied from the warranties and covenants given. In determining the intent of the parties, it is proper to consider the surrounding circumstances, *James Talcott, Inc. v. H. Corenzwit & Co.*, 76 *N.J.* 305, 312 (1978), such as whether the buyer was aware of the poor condition of the sidewalk when the purchase was made and whether the seller had advised the buyer of concealed or unknown defects in the sidewalk. *Cf. Weintraub v. Krobatsch*, 64 *N.J.* 445 (1974) (purchaser of real estate held entitled to rescission upon proof of seller's deliberate concealment or nondisclosure of infestation condition of premises). If the proofs were to establish such an understanding, the predecessor in title would be entitled to indemnification. Second, the parties may be joint tortfeasors, in which event the Joint Tortfeasors Contribution Law, *supra,* and the Comparative Negligence Act, *supra,* would govern.

█ *Stewart v. 104 Wallace Street, Inc., supra,* has expanded the duty of abutting owners of commercial property to include proper maintenance irrespective of whether a predecessor in title had improperly constructed the sidewalk. It follows that a prior owner of the property who has failed to shoulder that responsibility of maintenance should be in the same legal position with respect to the injured pedestrian as the prior owner who has been guilty of negligent construction. A pedestrian who establishes that any prior owner of the property negligently maintained the sidewalk and that that negligence was a proximate cause of the accident and the ensuing injuries will be

entitled to recovery from that wrongdoer.[6] Thus the plaintiff will have the burden of establishing that the predecessor's negligent failure to maintain the walk at a certain point in time was a substantial factor in causing the subsequent accident. Contribution or indemnification between or among wrongdoers will depend upon the relationship of the parties. We have alluded to some of the pertinent circumstances in this regard.

There remains to be considered the retrospective effect of *Stewart* and the principles in this opinion.

## II

We have held this day in *Mirza v. Filmore Corporation*, 92 *N.J.* 390 (1982), that the *Stewart* doctrine should be applied retrospectively. Whether the *Stewart* principle should be applied retrospectively to a predecessor in title whose obligation is predicated exclusively on a failure to maintain entails consideration of the same factors discussed in *Mirza*. One factor is of greater importance here—reliance.

Before turning to the substantive factors underlying our retrospectivity analysis, we must consider the threshold question

---

[6]Different rules of law may come into play in determining the liability of predecessors in title for injuries suffered on private property subsequent to the transfer of title. If so, this would be but one difference between the law governing the public way and that governing private property. In fact, historically and currently, the law has not been the same with respect to individuals who have been injured due to the conditions on the public sidewalk as opposed to private property. The status of the injured as trespasser, licensee, social invitee or business invitee has been a determinant in defining the owner's duty on private property; such delineation is irrelevant with respect to the pedestrian on the public sidewalk. The public has a right to expect safe passage on the public sidewalk; no such broad right exists with respect to private property.

Irrespective of any difference between the two, a person injured on the public sidewalk should be permitted to look to the wrongdoer who is responsible for the dangerous condition that caused his injury, even if that wrongdoer no longer holds title. Perhaps similar responsibility should be imposed on predecessors in title for injuries on private property. That case, however, is not before us.

of "whether a new rule of law has actually been announced." *State v. Burstein,* 85 *N.J.* 394, 403 (1981); *see State v. Kovack,* 91 *N.J.* 476, 487 (1982). As discussed above, there is some doubt as to the exact state of the law regarding the liability of predecessors in title prior to this opinion. While we consider it a close question, we conclude that the principle adopted here is a different rule of law in that the *Sarnicandro* pronouncement has been generally followed since 1958. While the intervening years make the rule of *Sarnicandro* no more or less defensible, they make it difficult for us to assert that we have simply restated the law. We thus must consider the issue of retrospectivity. That consideration includes the wisdom and fairness of retrospective application.

It is common in the field of real property for the sellers to terminate liability coverage upon the transfer of title. F. Harper & F. James, *supra,* § 27.18, at 1520, refer to "the practice of owners to insure against liability only for the periods when they have possession." In this case, for example, Oster cancelled his policy with Investors on September 1, 1977, five weeks after title closed and received the unearned premium. Frequently the insurance policy is assigned to the purchaser and an adjustment made in the closing statement of the costs ascribable to the respective periods of ownership. See 13 *N.J. Practice* (Lieberman Abstracts & Titles) § 560, at 370 (3d ed. 1966), setting forth form of Statement of Passing of Title which includes insurance premium adjustment and stating "[s]imilar [to interest on a mortgage] proportionate adjustments are made of the payment of insurance premiums and taxes and the receipt of rent." *Id.* § 558, at 364. While the author also cautions that it may be preferable for the buyer to obtain his own policy to be certain the coverage fits his needs and to avoid the necessity of obtaining the insurance company's consent to the assignment, no reference is made to any possible exposure of the seller due to an accident or other event occurring subsequent to the transfer. Under the circumstances that have existed, it is entirely conceivable that sellers of real property relied on the state

of law, albeit unsettled, in deciding what financial protection was necessary and, therefore, discharged insurance coverage upon consummation of the sale. Though reliance is more easily related to contract and real property law than to torts, non-retrospectivity has been applied in tort cases upon a showing that the party being charged had not purchased liability insurance. *E.g., Molitor v. Kaneland Community Unit District No. 302,* 18 *Ill.*2d 11, 163 *N.E.*2d 89 (1959), *cert. denied,* 362 *U.S.* 968, 80 *S.Ct.* 955, 4 *L.Ed.*2d 900 (1960) (giving prospective effect to new rule providing for public school tort liability, school districts having failed adequately to insure themselves against liability); *Parker v. Port Huron Hospital,* 361 *Mich.* 1, 105 *N.W.* 2d 1 (1960) (applying prospectively its holding that hospitals were no longer immune from tort liability, where hospitals may have failed to protect themselves by purchase of insurance); *Spanel v. Mounds View School District No. 621,* 264 *Minn.* 279, 118 *N.W.*2d 795 (1962) (prospectively eliminating sovereign immunity in tort case because it is more equitable to permit government to plan in advance by securing liability insurance or by self-insuring).

■ Though the reasonableness of this reliance may be open to some question, *see Mirza, supra,* 92 *N.J.* at 398, we believe the scales tip in favor of non-retrospectivity because of the additional element of insurance involved in the predecessor-in-title framework. However, *Stewart* is applicable to the parties in this case. The plaintiff should be rewarded for her efforts in challenging the rule concerning predecessors in title. We agree with Justice Proctor's comment in *Darrow v. Hanover Township,* 58 *N.J.* 410, 420 (1971): "[P]urely prospective rulings do not provide any inducement for litigants to challenge common law doctrines." Therefore, while the rule of predecessor liability will not be generally retrospectively applied, it will be applied to defendant Oster.

■ There remains for consideration what rule of law should be applied to the predecessor in title in those cases where the

accidents occurred before the date of this decision. As noted above, among the several conflicting lines of cases, the *Sarnicandro* pronouncement has been generally followed since 1958. Both plaintiff and defendant assumed that *Sarnicandro* controlled. Accordingly, we believe that under these circumstances, it should remain viable during the limited interim period.

## III

■ Investors contends that the third party action instituted against it by its assured Oster should be dismissed. Though it was conceded at oral argument that Oster had canceled the policy when title was closed or shortly thereafter, there is nothing in the record to disclose the terms and conditions of Oster's policy. A copy of the policy and its pertinent terms were never submitted to the trial court on Investors' motion for summary judgment. We agree with the Appellate Division: "The legal question of Investors' continuing obligation to Oster, assuming Oster's liability to plaintiff, depends on factual determinations and construction of policy language which in the first instance should be made by the trial court." 181 *N.J.Super.* at 585.

The judgments of the Appellate Division remanding the causes for trial are affirmed. There shall be a pretrial conference so that the parties' factual contentions may be set forth, facts stipulated and the particular issues delineated.

CLIFFORD, J., concurring in judgment.

Four score and six years ago our judicial forefathers brought forth upon the jurisprudence of this state a principle of law, conceived in good sense and dedicated to the proposition that all nuisance-maintainers are created equal. Relying on that principle, culled from *Meyer v. Harris*, 61 *N.J.L.* 83, 100–01 (Sup.Ct. 1897), this Court declared, in a nuisance-in-the-public-way case:

> Where * * * an owner demises land with a nuisance on it created by him or his predecessor in title, he remains liable. It is no defense to such claim that by demising the land he has lost the power to abate the nuisance; he should have so

abated it before parting with control. [*Pirozzi v. Acme Holding Co.,* 5 *N.J.* 178, 188 (1950).]

Now we are engaged in a great judicial debate, testing whether that proposition or any other proposition of sidewalk law can long endure. We are met on the battlefield of last resort in that debate, following closely on the heels of the skirmish in *Stewart v. 104 Wallace St., Inc.,* 87 *N.J.* 146 (1981). In *Stewart* the Court came to dedicate its opinion as a final resting-place for those decisions, including the late, lamented *Yanhko v. Fane,* 70 *N.J.* 528 (1976), that held the abutting owner not liable for the condition of a public sidewalk caused by the action of the elements or by wear and tear incident to the public use, but only for the negligent construction or repair of the sidewalk by himself or by a specified predecessor in title. *Mirza v. Filmore Corp.,* 92 *N.J.* 390 (1983), decided this day, applies *Stewart* retroactively. That requires an affirmance of the Appellate Division's remand for trial as to defendants Ecco and Capita, the abutting owner at the time plaintiff tripped and fell on the public sidewalk.

But what of defendant Oster, the predecessor in title? The Court, after rummaging about in other fields of tort law, including real property vendor liability, *ante* at 411–412, and contractor liability, *ante* at 413, finally settles on the proposition that "[a] pedestrian who establishes that any prior owner of the property negligently maintained the sidewalk and that that negligence was a proximate cause of the accident and the ensuing injuries will be entitled to recover from that wrongdoer." *Ante* at 414–415. I take it from footnote 6, *ante* at 415 n. 6, that there remains open the question of whether the rules governing the duration of a predecessor's liability are to be transplanted from other areas of tort law into our "new" sidewalk law. I suspect I would find such a mixture not to my taste and the concoction difficult to swallow, but that remains to be seen. As the matter stands, I concur in the judgment affirming the Appellate Division's remand.

The world may little note nor long remember what we say here, but it is adjured to forget what our predecessors did in formulating our sidewalk law. It is for us to be dedicated to the task remaining before us—applying the new rules of law.

CLIFFORD, J., concurring in the result.

*For Affirmance*—Chief Justice WILENTZ and Justices CLIFFORD, SCHREIBER, HANDLER, POLLOCK and O'HERN—6.

*For reversal*—None.