58 N.J. 410 (1971)
278 A.2d 200
GERALD P. DARROW AND HERMA DARROW, PLAINTIFFS-APPELLANTS,
v.
HANOVER TOWNSHIP, A MUNICIPAL CORPORATION, DEFENDANT-RESPONDENT, AND THE COUNTY OF MORRIS, DEFENDANT.
The Supreme Court of New Jersey.
Argued April 26, 1971.
Argued April 27, 1971.
Decided June 7, 1971.
Mr. Myron J. Bromberg argued the cause for plaintiffs-appellants (Messrs. Porzio, Bromberg & Newman, attorneys; Messrs. Myron J. Bromberg, Thomas R. Chesson and Brian M. Laddey on the brief).
Mr. Martin B. Wallerstein argued the cause for defendant-respondent (Messrs. Morgan, Melhuish, Monaghan, McCoid & Spielvogel, attorneys; Mr. Martin B. Wallerstein on the brief).
*411 Mr. Mark D. Larner argued the cause amicus curiae for Unigard Insurance Group (Messrs. Budd, Larner, Kent, Gross & Picillo, attorneys).
Mr. Gerald D. Miller argued the cause amicus curiae for Melody Dale Franco (Messrs. Miller, Hochman, Meyerson & Miller, attorneys; Mr. Gerald D. Miller on the brief).
Mr. Barry D. Epstein argued the cause amicus curiae for Kathleen M. Popolizio (Messrs. Boardman and Epstein, attorneys; Mr. Barry D. Epstein on the brief).
Mr. Paul X. McMenaman argued the cause amicus curiae for June Strelecki, Director of Motor Vehicles (Mr. Peter R. Verga on the brief).
The opinion of the Court was delivered by PROCTOR, J.
In Immer v. Risko, 56 N.J. 482, decided July 10, 1970, we abrogated the doctrine of interspousal immunity in automobile negligence cases. Prior to Immer the immunity rule barred negligence actions between spouses. Orr v. Orr, 36 N.J. 236 (1961); Koplik v. C.P. Trucking Corp., 27 N.J. 1 (1958); Kennedy v. Camp, 14 N.J. 390 (1954). Although we applied the new rule permitting such suits to the parties in Immer, we purposely left open the question of whether it should be fully retrospective. The issue was neither briefed nor argued, and it was our belief that the question should not be resolved until it could be considered in a full, adversary hearing. See Note, "Prospective Overruling and Retroactive Application in the Federal Courts," 71 Yale L.J. 907, 951 (1962). Accordingly, after we certified the present case we gave notice to the bar that interested parties might apply to us for certification or to submit briefs and appear as amici curiae. 94 N.J.L.J. 169 (March 11, 1971); 94 N.J.L.J. 204 (March 18, 1971). Although no other cases were certified, numerous parties submitted briefs and appeared at the argument before us as amici curiae.
*412 The present case arose out of an accident in the defendant Hanover Township when an automobile operated by plaintiff Gerald Darrow hit a tree, causing injuries to himself and his wife Herma, who was a passenger at the time. The Darrows brought suit against Hanover Township and the County of Morris, alleging that the tree projected into the road and that there was no warning of the danger. At the pretrial conference plaintiffs voluntarily dismissed their action against the County of Morris.
The accident occurred on April 13, 1967, and the suit was filed on April 14, 1969. (April 13, 1969, was a Sunday.) Our decision in Immer was rendered on July 10, 1970, as noted above, and on September 9, 1970, defendant Township was permitted to file a counterclaim for contribution against plaintiff Gerald Darrow. He answered, raising the defense of interspousal immunity, see Kennedy v. Camp, supra,[1] and moved for summary judgment on the counterclaim. The trial court, after hearing oral argument, denied the motion and permitted the counterclaim to stand holding that Immer was retrospective and that interspousal immunity could no longer be pleaded. 112 N.J. Super. 396 (Law Div. 1970). Thereafter, plaintiff Gerald Darrow sought and was granted leave to appeal. Prior to argument in the Appellate Division, we granted certification on our own motion. R. 2:12-1.
Plaintiff Gerald Darrow contends that the trial court erred in applying Immer retrospectively and urges us to reverse and give that decision prospective effect only. It can no longer be doubted that this Court has the power to give a decision solely prospective application; the State and Federal Constitutions are neutral on the question of retrospective and prospective application. Great Northern Railway Co. v. Sunburst Oil & Refining Co., 287 U.S. 358, 53 S.Ct. *413 145, 77 L.Ed. 360 (1932); Arrow Builders Supply Corp. v. Hudson Terrace Apts., 16 N.J. 47 (1954); cf. In re Thompson, 53 N.J. 276, 298-299 (1969); Dalton v. St. Luke's Catholic Church, 27 N.J. 22 (1958). Although we have the power to make our decisions solely prospective, our courts have generally followed the traditional view that the overruling of a judicial decision is retrospective in nature. Dalton v. St. Luke's Catholic Church, supra; Fox v. Snow, 6 N.J. 12, 14 (1950); Ross v. Board of Chosen Freeholders of Hudson County, 90 N.J.L. 522, 527 (E. & A. 1917). But see Willis et al. v. Dept. of Cons. & Ec. Dev., 55 N.J. 534 (1970). We have not done so on the basis of the old common law notion that overruling decisions do not "pretend to make a new law, but to vindicate the old one from misrepresentation * * *." Blackstone's Commentaries § 63 (Jones Ed.),[2] but rather because we believed that a weighing of *414 the various policies involved called for retrospectivity. E.g., Dalton v. St. Luke's Catholic Church, supra; Arrow Builders Supply Corp. v. Hudson Terrave Apts., supra.[3] Thus, the question involved in this case is whether there are sound policy reasons for limiting our decision in Immer to prospective effect.
Plaintiff urges several reasons for doing so. First, he contends that retrospective application of Immer will result in an undue burden on the court system. While we recognize fully that court congestion may work a substantial prejudice to litigants, we would never exclude from our courts persons having just causes of action on this basis. The court system was designed to serve the needs of the people and it would hardly be fulfilling its purpose if it excluded litigants because of inconvenience to lawyers and judges. As we said in Falzone v. Busch, 45 N.J. 559, 567 (1965) in response to an argument that abrogation of the impact rule in negligence actions would open a "flood of litigations": "* * * the fear of an expansion of litigation should not deter courts from granting relief in meritorious cases; the proper remedy is an expansion of the judicial machinery, not a decrease in the availability of justice."
Next plaintiff contends that Immer should not be given retrospective effect because our decision there was predicated *415 on the availability of insurance, and prior to January 1, 1967, coverage for "any member of the family of the insured" was excluded from the Standard Family Automobile Policy in New Jersey; consequently, allowing recovery for interspousal torts prior to that date would not further the purpose of Immer to place the risk of loss on insurers so as not to disturb the spousal relationship. We cannot accept the argument. While the presence of insurance was an important factor in our decision in Immer, we never held or meant to imply that the absence of insurance would be a bar to suits between spouses. In any event, it is not contended that the exclusion clause is involved in the present case, and if it were, there would be serious doubts as to its validity. See Kish v. Motor Club of America Ins. Co., 108 N.J. Super. 405 (App. Div. 1970), certif. denied 55 N.J. 595 (1970). See also State Farm Mut. Auto. Ins. Co. v. Travelers Ins. Co., 57 N.J. 174 (1970); Gerhardt v. Continental Ins. Cos., 48 N.J. 291 (1966); Allen v. Metropolitan Life Ins. Co., 44 N.J. 294 (1965); but see Goller v. White, 20 Wis. 2d 402, 122 N.W.2d 193 (1963). See generally, Keeton, "Insurance Law Rights at Variance with Policy Provisions," 83 Harv. L. Rev. 961 (1970).
Although we cannot agree with the above arguments in favor of prospectivity, we find persuasive appellants' main point  that there has been justifiable reliance on our earlier decisions upholding interspousal immunity. It is, of course, true that reliance has very little place in the field of torts so far as it affects the negligence itself; persons do not generally regulate their conduct because they believe they will or will not be liable in negligence. See Smith v. Brennan, 31 N.J. 353, 361 (1960); Molitor v. Kaneland Community Unit District No. 302, 18 Ill.2d 11, 163 N.E.2d 89 (1959), cert. denied 362 U.S. 968, 80 S.Ct. 955, 4 L.Ed.2d 900 (1960). This is particularly true in automobile accidents where negligence may be equally harmful to the wrongdoer. However, it is entirely conceivable that persons would rely on the state of the law in determining *416 what financial protection they need, or that the insurance institutions providing that protection would rely thereon in determining the degree of risk entailed and the rates of premiums to charge, and in deciding whether to investigate accidents involving their insureds[4] or to settle claims at an early date.
Reliance has been the primary factor which has led courts in other jurisdictions to limit decisions abrogating immunities to prospective effect. E.g., Darling v. Charleston Community Memorial Hospital, 33 Ill.2d 326, 211 N.E.2d 253 (1965), cert. den., 383 U.S. 946, 86 S.Ct. 1204, 16 L.Ed.2d 209; Molitor v. Kaneland Community Unit District No. 302, supra; Parker v. Port Huron Hospital, 361 Mich. 1, 105 N.W.2d 1 (1960); Spanel v. Mounds View School District No. 621, 264 Minn. 279, 118 N.W.2d 795 (1962); Beaudette v. Frana, 285 Minn. 366, 173 N.W.2d 416 (1969); Vickers v. Vickers, 109 N.H. 69, 242 A.2d 57 (1968); Kojis v. Doctors Hospital, 12 Wis.2d 367, 107 N.W.2d 292 (1961); Holytz v. City of Milwaukee, 17 Wis.2d 26, 115 N.W.2d 618 (1962); Dupuis v. General Cas Co., 36 Wis.2d 42, 152 N.W.2d 884 (1967). See generally Annotation, "Prospective or Retroactive Operation of Overruling Decision," 10 A.L.R.2d 1371, 1379-81, 1386-90; Schaefer, "The Control of `Sunbursts': Techniques of Prospective Overruling," 42 N.Y.U.L. Rev., 631, 642-43 *417 (1967); Currier, "Time and Change in Judge-Made Law: Prospective Overruling," 51 Va. L. Rev. 201, 234-246 (1965).
Defendant points out, however, that many of the above decisions which held abrogation of an immunity to be prospective dealt with charitable immunity and that this Court took the opposite position in its decision overruling that doctrine. Dalton v. St. Luke's Catholic Church, supra. In Dalton, we held that Collopy v. Newark Eye and Ear Infirmary, 27 N.J. 29 (1958), which abrogated charitable immunity, should be retrospective. But we think that the situation in Dalton is entirely different from that in the present case. In Dalton, we expressly found that there had been no reasonable basis for reliance on the continuance of the charitable immunity doctrine. 27 N.J. at 26-27. Charitable institutions had been repeatedly warned over a considerable period of time that their status of immunity was imperiled. Id. at 26; see, e g., Lindroth v. Christ Hospital, 21 N.J. 588, 590-591 (1956). Prior to Dalton the most recent decision of this Court discussing the issue showed that three of the six participating justices affirmatively voiced their opposition to the doctrine. Lokar v. Church of the Sacred Heart, 24 N.J. 549 (1957). Even before Lokar it was apparent to commentators that the doctrine "was clearly in full retreat," Prosser, Law of Torts 787, 789 (2d ed. 1955), and that its demise in New Jersey was imminent. Cowan, "Torts," 10 Rutgers L. Rev. 115, 119 (1955).
In contradistinction to the charitable immunity doctrine, we think that there was a reasonable basis for reliance on the continued viability of the doctrine of interspousal immunity. Although it is true that this Court was sharply divided on the issue for a number of years, there was no indication that the balance would change. It was only because the writer of this opinion changed his views on the subject that the majority shifted, and I had given no indication of my rethinking prior to Immer. See my remarks at Immer v. Risko, supra at 495. In fact, recent decisions *418 of this Court, two of which were decided after the accident in the present case, would have led readers reasonably to believe that all members of the majority were steadfast in their opinion that the doctrine of interspousal immunity should stand. See Franco v. Davis, 51 N.J. 237, 240 (1968) ("* * * we remain sharply divided in the whole field of intra-family tort immunity. * * *"); Patusco v. Price Macaroni, Inc., 50 N.J. 365, 368-69 (1967) ("It must be kept in mind that under the existing policy in our State a wife may not sue her husband as a tortfeasor. * * *"); Orr v. Orr, supra, at 238; Koplik v. C.P. Trucking Corp., supra at 13; Kennedy v. Camp, supra at 403.
Accordingly, we think there was a reasonable basis for reliance on the existing state of the law. But defendant Township urges that even if there was a basis for reliance, there was no actual reliance because torts are not ordinarily committed in reliance on a substantive doctrine of law. We agree with that premise. As we stated earlier, we do not mean to suggest that drivers are less cautious because they may be immune from suit by their spouses. However, we do believe that their insurance carriers had a reasonable basis to rely on the immunity. As we pointed out in Immer, it is they who are most frequently the real parties in interest. Immer v. Risko, supra at 489-495.
The primary area of reliance by carriers is the investigation of accidents.[5] While this Court was firmly split, insurers had no reason to promptly investigate accidents involving the possibility of interspousal claims. It is crucial to an adequate determination of liability that an insurer *419 have the opportunity to gather evidence as soon as possible after the accident. To effectively protect its interests, a carrier must ordinarily identify the witnesses and take their statements while memories are fresh; it must also make prompt physical examinations of prospective claimants. As time passes, witnesses disappear, memories fade and claimants may have intervening physical difficulties; investigations can be pursued only with great difficulty and little promise of success. When we spoke in Immer of the ability of trial judges and juries to weed out collusive and fraudulent claims, 56 N.J. at 493-494, we were thinking of claims which could be adequately defended through an independent investigation of the facts. If insurance carriers are reduced to relying entirely upon statements by the litigant spouses, without further investigation, the task may prove too onerous.
We note that the majority of other courts faced with the problem of whether to apply their decisions abrogating intra-family immunities have done so prospectively primarily because they have found justified reliance by defendants or their insurers. Rigdon v. Rigdon, 465 S.W.2d 921 (Ky. Ct. App. 1971) (child-parent immunity); Beaudette v. Frana, supra (interspousal immunity); Silesky v. Kelman, 281 Minn. 431, 161 N.W.2d 631 (1968) (child-parent immunity); Balts v. Balts, supra (parent-child immunity); Vickers v. Vickers, supra (child-parent immunity); Goller v. White, supra (parent-child immunity); but see Gelbman v. Gelbman, 23 N.Y. 2d 434, 297 N.Y.S.2d 529, 245 N.E.2d 192 (Ct. App. 1969).
Aside from protecting those who justifiably relied on interspousal immunity, prospective application of Immer will serve yet another purpose. It will foster stability since it will avoid the necessity of opening claims which might have gone stale because of a failure to promptly investigate. Prospectivity permits the Court to introduce an important change in the law with minimal disruption; it will not affect past conduct or relationships. The fear of disrupting what had been regarded as settled has sometimes restrained *420 our courts from adopting a new and more just rule. E.g., Fox v. Snow, supra at 14 (see especially remarks of Chief Justice Vanderbilt in his dissent at 14). Prospectivity can avoid unsettling the past and serve as an encouragement for judicial creativity. See generally Levy, "Realist Jurisprudence and Prospective Overruling," 109 U. Pa. L. Rev. 1 (1960).
For the above reasons we hold that Immer is prospective only and that defendant Township's counterclaim is barred. The Immer rule will be available only to persons suffering injuries in automobile accidents occurring after July 10, 1970, the date Immer was decided. We applied Immer retrospectively to the parties in that case because we believed that the plaintiff and cross-claimant should have been rewarded for their efforts in challenging the immunity doctrine; purely prospective rulings do not provide any inducement for litigants to challenge common law doctrines.
The judgment of the trial court is reversed and the cause is remanded to that court for disposition consistent with this opinion.
For reversal and remandment  Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and MOUNTAIN  7.
For affirmance  None.
NOTES
[1] In Kennedy v. Camp, 14 N.J. 390 (1954) this Court held that a tortfeasor may not have contribution from a joint participant in the tortious act or omission for the injurious consequences to the wife of the joint participant.
[2] As we said in State v. Johnson, 43 N.J. 572, 582-583 (1965):

"Perhaps, years ago, there was a philosophical compulsion to apply a new ruling retrospectively. The so-called Blackstonian conception of the nature of law and judicial decision-making was that law was perpetual and immutable. Judges were thought to be the discoverers rather than the creators of the law. Thus, a given decision was merely an evidence of the law; the most recent decision being the most authoritative evidence. An overruled holding was not bad law, it was simply never the law. See Levy, "Realist Jurisprudence and Prospective Overruling," 109 U. Pa. L. Rev. 1, 2 (1960); Note, supra, 71 Yale L.J., at p. 908.
Whatever the past status of the above philosophy, it has been recently characterized as a "splendid myth." United States ex rel. Durocher v. LaVallee, 330 F.2d 303, 312 (2 Cir.1964); see also Gaitan v. United States, 317 F.2d 494, 497 (10 Cir.1963); United States ex rel. Angelet v. Fay, 333 F.2d 12, 16 (2 Cir.), cert. granted 379 U.S. 815, 85 S.Ct. 126, 13 L.Ed.2d 28 (1964); Levy, supra, 109 U. Pa. L. Rev. 1. See also Justice Frankfurter's concurring opinion in Griffin v. Illinois [351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891] supra.
"It is now recognized that judicial decision making is often creative and requires that judges, although in a strictly limited sense, "legislate." See Cardozo, The Nature of the Judicial Process, 124-132 (1921); Clark and Trubek, "The Creative Role of the Judge; Restraint and Freedom in the Common Law Tradition," 71 Yale L.J. 255, 275-76 (1961); Weintraub, "Judicial Legislation," 81 N.J.L.J. 545 (1958); Levy, supra, 109 U. Pa. L. Rev., at p. 28. Thus, contemporary judicial decisions announcing a new rule of law are the product, not only of a re-evaluation of abstract principles of justice but also of practical considerations of current economic, social, and political realities, and the effect of the rules announced in those decisions upon current institutions.
[3] Both Chief Justices of this Court have recognized the need for greater exploration of the subject of prospective overruling. Shortly before his death, Chief Justice Vanderbilt wrote to Beryl Harold Levy that he intended to broach a proposal for greater utilization of the device with other members of the Supreme Court. Levy, "Realist Jurisprudence and Prospective Overruling," 109 U. Pa. L. Rev. 1, 23 n. 73 (1960). And in an address to the Iota Theta Fraternity in New York City on September 30, 1958, Chief Justice Weintraub said that the "problem [of prospective overruling] should be thoughtfully explored" as an element of a realistic jurisprudence. Weintraub, "Judicial Legislation," 81 N.J.L.J. 545, 549 (1958).
[4] In the present case, the only affidavit before the trial court and before us is that of the Assistant Claims Manager of Gerald Darrow's liability insurer. The affiant states that the insurer relied on the interspousal, immunity doctrine in not investigating the Darrows' accident. Moreover, the affiant also states that:

During my entire claims career, in which I have had substantial contact with many other claims people at Liberty Mutual and with claims men of other insurance companies, I know of no situation where any insurance carrier has investigated or prepared to defend itself in regard to claims that might be asserted by a wife against her husband as a result of the commission of a tort in New Jersey. This is so because we had understood that the Supreme Court of New Jersey had consistently reaffirmed its position that interspousal and interfamilial immunity was the law of the State of New Jersey.
[5] Before us one of the amici curiae asserts that insurance companies have also relied on the immunity doctrine in computing and adjusting their rates. See Balts v. Balts, 273 Minn. 419, 431, 142 N.W.2d 66, 74 (1966). If that were true, it might mean that a retrospective application of Immer would require today's motoring public to pay for the accidents of the past and to make up those losses. But we need not consider this problem because we regard the material presented to us in support of this claim as inconclusive and inadequately documented.