503 F.2d 403
 Rose ZURZOLA and Matthew Zurzola, husband and wife
v.
GENERAL MOTORS CORPORATION, Appellant in 73-1983,
v.
Matthew ZURZOLA, Third-Party-Defendant, and Jack Mutchnick
and DeVille Leasing Corporation,
Third-Party-Defendants.
Appeal of Jack MUTCHNICK, in 73-1959.
Rose ZURZOLA et al.
v.
Jack MUTCHNICK, Appellant, and DeVille Leasing Corporation
v.
Matthew ZURZOLA, Third-Party-Defendant.
 Nos. 73-1959, 73-1983 and 73-1960.
 United States Court of Appeals, Third Circuit.
 Argued April 16, 1974.
Decided Sept. 17, 1974.
 
 Francis E. Marshall and Edward R. Murphy, Marshall, Dennehey & Warner, Philadelphia, Pa., for appellee, Matthew Zurzola.
 George J. Lavin, Jr. and Francis F. Quinn, Liebert, Short, Fitzpatrick & Lavin, Philadelphia, Pa., for appellant, General Motors Corp.
 Henry J. Lotto, Philadelphia, Pa., for appellant, Jack Mutchnick.
 Before BIGGS, ALDISERT and ROSENN, Circuit Judges.
 OPINION OF THE COURT
 BIGGS, Circuit Judge.
 
 
 1
 Rose Zurzola and Matthew Zurzola, husband and wife, residents and citizens of New Jersey, on May 26, 1969, motored to visit relatives in Philadelphia. They became involved in an accident with another automobile at the intersection of Roosevelt Boulevard and Harbison Avenue, in philadelphia. The driver of the other vehicle was mutchnick, a resident of Pennsylvania. His automobile was owned by and leased to him by the DeVille Leasing Corporation, a Pennsylvania corporation, and had been manufactured by General Motors Corporation, a Delaware corporation. Two suits based on diversity were filed. The first was brought by Rose Zurzola and Matthew Zurzola, husband and wife, and Matthew Zurzola in his own right, vs. General Motors Corporation, No. 70-308 in the district court, at our Nos. 73-1959 and 73-1983. General Motors was accused of having equipped the car with inferior safety glass. General Motors moved to join Mutchnick and DeVille Leasing Corporation as third party defendants and to sever and join Matthew Zurzola as a third party defendant. These motions were granted. The second suit at No. 70-310 in the district court and at our No. 73-1960, was brought by Rose Zurzola, and Rose Zurzola and Matthew Zurzola, husband and wife, and Matthew Zurzola in his own right, vs. Jack Mutchnick and DeVille Leasing Corporation, alleging negligence on the part of Mutchnick in operating an automobile owned by DeVille while acting as agent of DeVille. The defendants ants moved to sever Matthew Zurzola and join him as a third party defendant and a severance order was entered. The third party complaint alleges negligence on the part of Matthew Zurzola. The learned district judge entered an order granting Matthew Zurzola's motion to dismiss him as a third party defendant, in both actions, on the ground of interspousal immunity. General Motors and Mutchnick have appealed, having procured adequate Rule 54(b), 28 U.S.C. orders.
 
 
 2
 In limine we are faced with a complex conflict of laws issue. The district court, 341 F.Supp. 767 (E.D.Pa.1972), concluded: 'Presently before this Court are motions of Matthew Zurzola to dismiss him as a third-party defendant on the premise that he is immune from contribution even if a jury finds that negligence on his part caused the injuries to his wife. For the reasons set forth below, we will grant those motions.'
 
 
 3
 Since the jurisdiction of the district court is based on diversity of citizenship, we apply the conflicts of law rules of Pennsylvania. Klaxon Co. v. Stentor Electrical Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). In Griffith v. United Airlines, Inc., 416 Pa. 1, 203 A.2d 796 (1964), the Pennsylvania Supreme Court held that a court must examine the various contacts that each state has with the matter in controversy to ascertain the state that has the greater interest in the issue and the law of the state most interested should be applied to resolve any dispute.
 
 
 4
 The district court in the instant case went on to say, 341 F.Supp. at 769: 'Applying this test, it is our considered judgment that New Jersey has the most significant interest in the issue of intraspousal contribution. Matthew and Rose Zurzola were domiciliaries of New Jersey at the time of this accident. Since New Jersey is the state which has the basic responsibility for regulating the incidents of the marital relationship, it follows that any effect which this litigation might have on the domestic relations of these parties is a primary concern to New Jersey.
 
 
 5
 'On the other hand, Pennsylvania has an important interest in assuring its citizens safe travel on the state's highways. To the extent that the threat of liability deters carelessness, Pennsylvania arguably has an interest in intraspousal contribution. But resort to New Jersey law in this case should not significantly reduce any deterrence sought by Pennsylvania since the negligent spouse remains liable to third persons beyond the family relationship. Consequently, we are convinced that Pennsylvania would apply New Jersey law to the issue of intraspousal contribution.
 
 
 6
 'In fact, the Pennsylvania Supreme Court's holding in McSwain v. McSwain (420 Pa. 86, 215 A.2d 677 (1966)) mandates this conclusion. That case involved an automobile accident in Colorado involving married residents of Pennsylvania. Mrs. McSwain sued her husband in Pennsylvania under the Colorado Death Act alleging that the accident and death of their child were caused by his negligence. Under Colorado law, a wife could sue her husband directly in tort, whereas, Pennsylvania law barred direct intraspousal tort actions. The lower court held that Pennsylvania law applied and therefore, Mrs. McSwain was barred from suing. The Supreme Court affirmed and stated that: 'Our conclusion to look to the law of Pennsylvania on the issue of intramarital immunity rests . . . upon a determination that the circumstances of the instant case do not warrant the interjection of Colorado law into what is essentially a Pennsylvania family controversy.' Id. 97, 215 A.2d (677) 683.
 
 
 7
 'Turning to New Jersey law, we find that in all instances intraspousal contribution was forbidden at the time of this accident. See e.g., Kennedy v. Camp, 14 N.J. 390, 102 A.2d 595 (1953).
 
 
 8
 'On July 10, 1970, however, the New Jersey Supreme Court changed the common law to permit such contribution in tort actions. See Immer v. Risko, 56 N.J. 482, 267 A.2d 481 (1970). Defendant Mutchnick argues that this opinion should apply retroactively to permit contribution in this case. Although retroactive application in the Immer case has great appeal, the New Jersey Supreme Court expressly held in Darrow v. Hanover Township, 58 N.J. 410, 278 A.2d 200 (1971), that the Immer decision had prospective application only. Since we are bound to follow New Jersey law and this accident occurred more than a year prior to the Immer opinion, we conclude that Matthew Zurzola enjoys immunity from contribution.
 
 
 9
 'Even if we were to consider this case under Pennsylvania law, the result would not change. Although the defendants assert that Pennsylvania law permits joinder of a spouse as a third-party defendant for purposes of contribution, the recent Supreme Court case of Falco v. Pados, (444 Pa. 372), 282 A.2d 351 (1971), expressly held otherwise. Compare Ondovchik v. Ondovchik, 411 Pa. 643, 192 A.2d 389 (1963). Consequently, we must hold that Matthew Zurzola is immune from liability in this suit.'
 
 
 10
 Only one question is presented here for decision, i.e., should the law of New Jersey or that of Pennsylvania be applied to determine the liability of Matthew Zurzola. As we have said, we must apply the conflict of laws principles of the forum, Pennsylvania. Klaxon Co., supra. The Pennsylvania Supreme Court has held that a court should examine the various contacts that it and any other State has in respect to the controversy to determine what State has the greater interest in the issue. In short, we look to the interests of the States, not to those of individual parties.
 
 
 11
 Significant contacts seem to lie in the law of both States. As to Pennsylvania, we note the following: (a) The accident occurred in Pennsylvania; (b) the case is being tried in a Pennsylvania court; (c) the defendants and, correspondingly, their insurers may be financially injured by the failure to apply Pennsylvania law; (d) all the defendants have ample Pennsylvania connections; and (e) the safety of the highways of Pennsylvania will be heightened by imposing liability for careless driving whether or not the driver is being sued by or is suing a spouse. New Jersey also has its interests (a) to protect its insurers from losses and (b) to preserve family harmony.
 
 
 12
 In McSwain v. McSwain, 420 Pa. at 91-97, 215 A.2d at 680-683, where there was a conflict between the law of Pennsylvania and the law of Colorado, Mr. Justice Roberts, speaking for the court, said: 'Given the conflict between the law of Colorado, the situs of the accident, and the law of Pennsylvania on the effect of the marital relationship of the parties on appellant's right to prosecute the instant suit, we are thus confronted with the question of whether the circumstances of the case warranted the application of the Pennsylvania rule.
 
 
 13
 'Although rendered prior to the decision in Griffith v. United Airlines, Inc., 416 Pa. 1, 203 A.2d 796 (1964), in which this Court rejected the rule of lex loci delicti, the trial court's decision to look beyond the situs of the accident to apply the Pennsylvania rule of interspousal immunity was not without precedent. Even at the height of its acceptance, similar departures from the dictates of lex loci delicti were made by courts confronted with a conflict as to the effect of the marital relationship on the right of the parties to sue inter se. Following the precedent established in Emery v. Emery, 45 Cal.2d 421, 289 P.2d 218 (1955), an early decision departing from the usual resort to lex loci delicti, a number of courts began to apply the law of the marital domicile to determine the issue. By characterizing the effect of the marital relationship on the rights of the parties as an aspect of family or domestic relations, rather than tort law, many courts which otherwise adhered to the rule of lex loci delicti isolated the issue for treatment under a different choice of law rule. In this manner, some of the rigidity which lex loci delicti introduced into the solution of choice of law problems was partially alleviated.
 
 
 14
 'It was in part a recognition of the considerations which prompted such departures and their applicability to the entire spectrum of choice of law problems which led to the growing dissatisfaction with the rule of lex loci delicti. Time found the rule increasingly criticized as a mechanical methodology, predicated on the out-moded 'vested rights' theory, and emphasizing certainty and predictability at the expense of other, frequently more relevant considerations. See Griffith v. United Airlines, Inc., 416 Pa. 1, 12-13, 203 A.2d 796, 801 (1964). In a series of significant decisions, a number of jurisdictions abandoned 'vested rights' and its embodiment in the rule of lex loci delicti. Recognizing that the state of the situs of the 'tort' may not necessarily have a sufficient interest in the issue in dispute to warrant the interjection of its policies into the litigation, these courts embarked upon a new approach to the solution of choice of law problems which replaced the a priori assumptions of lex loci delicti with an analysis of the interests of the various states factually involved in the matter in dispute.
 
 
 15
 'In Griffith, supra, we sought to make clear that our decision to adopt this approach was dictated by an appreciation of our federal system, the frequently varying policies of its member states, and the increasing mobility of our society. With our citizens and institutions exposed to the varying policies of different states, frequently unequal in their claims to priority, the premise of lex loci delicti that a single spatial fact is an adequate guide to the solution of choice of law problems is no longer acceptable.
 
 
 16
 'Whether the policies of one state rather than another should be furthered in the event of conflict can only be determined within the matrix of specific litigation. What should be sought is an analysis of the extent to which one state rather than another has demonstrated, by reason of its policies and their connection and relevance to the matter in dispute, a priority of interest in the application of its rule of law. See Griffith v. United Airlines, Inc., 416 Pa. 1, 15, 21-22, 203 A.2d 796, 802, 805, 806 (1964); cf. Bernkrant v. Fowler, 55 Cal.2d 588, 12 Cal.Rptr. 266, 360 P.2d 906 (1961); Babcock v. Jackson, 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E.2d 279 (1963).
 
 
 17
 'Under the circumstances of the instant case, such analysis leads us to conclude that the court below did not err in the application of Pennsylvania law to preclude the claim here sought to be asserted.
 
 
 18
 'We are led to this conclusion by an examination of the respective interests of Colorado and Pennsylvania in the effect to be given the marital relationship on appellant's right to proceed against her husband. Pennsylvania, by its rule prohibiting such suits, has expressed an interest in foreclosing litigation as an avenue for engendering friction between spouses. See, e.g., Johnson v. Peoples First National Bank & Trust Co., 394 Pa. 116, 145 A.2d 716 (1958); Parks v. Parks, 390 Pa. 287, 135 A.2d 65 (1957); Kaczorowski v. Kalkosinski, 321 Pa. 438, 184 A. 663 (1936). Colorado, on the other hand, by its rule permitting such suits, has expressed an interest in providing redress for the injured spouse even if obtained at the expense of marital harmony.
 
 
 19
 'Presumably, Colorado has made its determination to permit such suits with its own domiciliaries primarily in mind. In the instant case, however, we deal with a suit between Pennsylvania domiciliaries. Any effect which this litigation may have on the marital relations of the parties is a matter of concern primarily to Pennsylvania, the state which has the basic 'responsibility for establishing and regulating the incidents of the * * * relationship' of the parties. Emery v. Emery, 45 Cal.2d 421, 423, 289 P.2d 218, 223 (1955.)[1] And, although Colorado, as the state of both the conduct and injury could assert an interest in this litigation in order to further the deterrence of negligent conduct on its highways and to secure, in the event of insurance, a fund for the payment of local creditors, those interests would not be disserved by the application of the Pennsylvania rule of interspousal immunity in the instant case.
 
 
 20
 'Unlike resort to a standard of care less rigorous than that demanded by Colorado of those who use its highways, resort to the law of Pennsylvania to bar the instant suit would have no adverse effect on any deterrence sought by Colorado through the use of tort liability. Since negligent operation of a motor vehicle invariably involves some hazard to persons beyond the family relationship, potential liability still remains to deter unreasonable conduct on the part of those able to insulate themselves from intrafamily suit.
 
 
 21
 'Moreover, with regard to Colorado's interest in securing a fund for the payment of local medical creditors, that interest would not be adversely affected under the facts of the instant case. Since the accident resulted in near immediate death, significant debts are not likely to have been incurred in Colorado.
 
 
 22
 'Our conclusion to look to the law of Pennsylvania on the issue of intramarital immunity rests, not upon a fixed and invariable rule of characterization, such as would dictate resort to the law of the marital domicile in all such cases, but upon a determination that the circumstances of the instant case do not warrant the interjection of Colorado law into what is essentially a Pennsylvania family controversy. The mere fact that the accident occurred in Colorado, absent the expression of a significant interest on the part of that state, does not justify our refusal to give effect to the public policy of this Commonwealth, as embodied in the Act of 1893, that suits of the instant sort not be permitted. The desirability or wisdom of that policy has, since the enactment of the Act, been a matter of legislative determination. Our conclusion here merely recognizes and gives effect to that legislative mandate.'
 
 
 23
 We think the language quoted from Mr. Justice Roberts' opinion suggests, if it does not compel, the conclusion that Pennsylvania courts would look to the law of the domicile of the parties to determine the interests of that state in respect to spousal relations. In the case at bar the domicile is New Jersey.
 
 
 24
 It is not necessary to decide any issue of Pennsylvania law for we have decided that the law of New Jersey is applicable. If we apply that law, we must reach the conclusion that the immunity of Matthew Zurzola from suit is operstive. New Jersey has a statute somewhat similar to that of Pennsylvania. It is as follows: N.J.S.A. 37:2-5: 'Right of husband and wife to contract with or sue each other-- Nothing in this chapter contained shall enable a husband or wife to contract with or to sue each other, except as heretofore, and except as authorized by this chapter.'[2] At the time of this accident, the law of New Jersey would not have permitted the joinder for in Kennedy v. Camp, 14 N.J. 390, 102 A.2d 595 (1954), the Supreme Court of New Jersey held that a tortfeasor may not have contribution from a joint participant in the tortious act or omission for the injurious consequences to the wife of the joint participant. In Immer v. Risko, 56 N.J. 482, 267 A.2d 481 (1970), the Supreme Court of New Jersey abrogated the doctrine of interspousal immunity in automobile negligence cases. Justice Proctor took the position that the statute embodied the common law and, therefore, the Supreme Court of New Jersey was entitled to reinterpret it as indicated.[3][4]
 
 
 25
 In Darrow v. Hanover Township, 58 N.J. 410, 411, 278 A.2d 200, 201 (1971), Justice Proctor stated: 'Prior to Immer the immunity rule barred negligence actions between spouses. Orr v. Orr, 36 N.J. 236, 176 A.2d 241 (1961); Koplik v. C. P. Trucking Corp., 27 N.J. 1, 141 A.2d 34 (1958); Kennedy v. Camp, 14 N.J. 390, 102 A.2d 595 (1954). Although we applied the new rule permitting such suits to the parties in Immer, we purposely left open the question of whether it should be fully retrospective. The issue was neither briefed nor argued, and it was our belief that the question should not be resolved until it could be considered in a full, adversary hearing. See Note, 'Prospective Overruling and Retroactive Application in the Federal Courts,' 71 Yale L.J. 907, 951 (1962). Accordingly, after we certified the present case we gave notice to the bar that interested parties might apply to us for certification or to submit briefs and appear as amici curiae. 94 N.J.L.J. 169 (March 11, 1971); 94 N.J.L.J. 204 (March 18, 1971). Although no other cases were certified, numerous parties submitted briefs and appeared at the argument before us as amici curiae.' The conclusion of the Supreme Court of New Jersey was that the Immer change was not to be applied retroactively.[5]
 
 
 26
 The New Jersey Supreme Court, in Darrow, treats the date of the accident as critical and the fact that the law is changed while the case or the appeal is pending is not considered to permit the application of the new rule. In short, the accident must occur after July 10, 1970, the date Immer was decided, in order for its principle to be applied. Here the accident took place before the Immer decision. This concludes our inquiry. It follows that Matthew Zurzola is immune from liability in these suits.
 
 
 27
 The judgment of the district court will be affirmed.
 
 
 28
 ROSENN, Circuit Judge (dissenting).
 
 
 29
 I respectfully dissent. Unlike the district court, I believe that under Pennsylvania law the defendants in these cases could properly join the plaintiff's spouse as a third-party defendant for purposes of contribution. Since the applicable New Jersey law is clearly to the contrary, this reading of Pennsylvania law requires that I determine whether these cases should be decided under Pennsylvania or New Jersey law. I believe, unlike the majority in this case, that Pennsylvania's conflict-of-law rules require that these cases be decided under Pennsylvania law. I therefore conclude that the district court committed error when it dismissed Matthew Zurzola as a thirdparty defendant in the actions on the ground of interspousal immunity.
 
 I.
 
 30
 I agree with the majority that at the time of the accident here in question, New Jersey law was governed by Kennedy v. Camp, 14 N.J. 390, 102 A.2d 595 (1954), which held that a defendant tortfeasor could not bring an action for contribution against the spouse of the plaintiff in the original action. I also agree that Kennedy was reversed by Immer v. Risko, 56 N.J. 482, 267 A.2d 481 (1970), which abolished the doctrine of interspousal immunity in New Jersey in automobile negligence actions. In Darrow v. Hanover Township, 58 N.J. 410, 278 A.2d 200 (1971), the New Jersey Supreme Court held that 'the Immer rule will be available only to persons suffering injuries in automobile accidents occurring after July 10, 1970, the date Immer was decided.' 58 N.J. at 420, 278 A.2d at 205. Since the accident with which we are concerned occurred on May 26, 1969, before Immer, it is clear that the third-party action was properly dismissed under Kennedy if New Jersey law is applicable.
 
 
 31
 I believe, however, that Pennsylvania law is to the contrary. Interspousal immunity in Pennsylvania is based upon 48 P.S. 111, unchanged since 1913, which states that a husband or wife 'may not sue' his or her spouse, with exceptions not here relevant. In Puller v. Puller, 380 Pa. 219, 110 A.2d 175 (1955), however, the Pennsylvania Supreme Court stated that the general rule of interspousal immunity was inapplicable to a suit for contribution by a defendant against the plaintiff's spouse. The court stated:
 
 
 32
 Whatever may be the law in the majority of other jurisdictions . . ., it is established in our own State that a tort-feasor has a right to contribution against a joint tort-feasor even though the judgment creditor be the latter's spouse, parent, or minor child; in other words, a tort-feasor may recover such contribution even though, for some reason, the plaintiff who has obtained a judgment against both of them is precluded from enforcing liability thereunder against the joint tort-feasor: Kaczorowski v. Kalkosinski, 321 Pa. 438, 440, 441, 184 A. 663, 664, 104 A.L.R. 1267; Maio, Executrix v. Fahs, 339 Pa. 180, 188, 14 A.2d 105, 109; Rau v. Manko, 341 Pa. 17, 22, 23, 17 A.2d 422, 425; Fisher v. Diehl, 156 Pa.Super. 476, 483-486, 40 A.2d 912, 916-918. The theory is that as between the two tort-feasors the contribution is not a recovery for the tort but the enforcement of an equitable duty to share liability for the wrong done. Undoubtedly, therefore, (the defendant suing for contribution) in this case can recover from (the husband) half the amount of the judgment it paid to (the husband's) wife and daughter.
 
 
 33
 380 Pa. at 221-22, 110 A.2d at 177.
 
 
 34
 This language clearly indicates that even though a wife could not directly enforce liability against her husband, a defendant against whom the wife obtains a judgment has a right to contribution from her husband, based upon the husband's 'equitable duty to share liability for the wrong done.' The cases cited in the quotation make the same distinction between direct suits between husband and wife, and suits involving contribution to a third party. See especially Fisher v. Diehl, supra.[1]
 
 
 35
 The district court believed that Puller was overruled sub silentio by Falco v. Pados, 444 Pa. 372, 282 A.2d 351 (1971). In Falco the husband, as guardian of his child and in his own right, brought an action against Pados, who joined the wife as an additional defendant. A verdict was entered against both defendants. When the original defendant's assets proved insufficient to pay the judgment, the husband thereupon attempted to garnish his wife's liability insurance policy. The court rejected this attempt, stating that 48 P.S. 111 'prevents the (husband) from recovering damages from his wife in the personal injury action involved, even though his rights are derivative . . ..' 444 Pa. at 384, 282 A.2d at 357.
 
 
 36
 Far from overruling Puller sub silentio, Falco is fully consistent with Puller.[2] Falco involved an unsuccessful attempt by a plaintiff husband to enforce liability directly against his wife, the joint tortfeasor. The possibility that such an action would be barred was recognized in Puller, but Puller expressly stated that the barring of such an action would not preclude an action for contribution by the defendant against the joint tortfeasor spouse of the plaintiff. As quoted above from Puller:
 
 
 37
 tort-feasor may recover such contribution even though, for some reason, the plaintiff who has obtained a judgment against both of them is precluded from enforcing liability thereunder against the joint tort-feasor.
 
 
 38
 Falco, of course, involved the fact situation discussed in the second part of this sentence from Puller, namely a husband obtaining a judgment against his wife and a third party, and attempting to enforce liability directly against his wife.2A It was not an action for contribution. The instant case involves the fact situation discussed in the first part of the sentence, namely a defendant attempting to recover contribution from the plaintiff's spouse. The quoted language clearly indicates that the present action is permissible.[3] See also Fisher v. Diehl, supra; Restifo v. McDonald, 426 Pa. 5, 7 n. 1, 230 A.2d 199, 200 n. 1 (1967). I believe, therefore, that if Pennsylvania law is applicable to the instant case, the district court erred in dismissing the third-party actions against the plaintiff's husband.[4]
 
 II.
 
 39
 Having concluded that the outcome of this diversity case depends upon whether Pennsylvania or New Jersey law is applicable, I now turn to the Pennsylvania conflict-of-law rules, Klaxon Co. v. Stentor Electrical Manufacturing Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), to determine which state's law governs this case. As noted by the majority, the leading Pennsylvania case on the subject of conflict of laws is Griffith v. United Air Lines, Inc., 416 Pa. 1, 203 A.2d 796 (1964), which abandoned the rule of lex loci delicti and adopted instead a more flexible rule which permits analysis of the policies and interests underlying the particular issue before the court.' 416 Pa. at 21, 203 A.2d at 805. As stated in McSwain v. McSwain, 420 Pa. 86, 94, 215 A.2d 677, 682 (1966), 'what should be sought is an analysis of the extent to which one state rather than another has demonstrated, by reason of its policies and their connection and relevance to the matter in dispute, a priority of interest in the application of its rule of law.'
 
 
 40
 I first consider the interest of Pennsylvania in the application of its own law in this case, permitting the defendant tortfeasors to obtain contribution from a joint tortfeasor who is the husband of the plaintiff. As noted by the majority, the accident occurred in Pennsylvania; the husband-plaintiff (who now claims the benefit of New Jersey law) chose to bring suit in federal court in Pennsylvania; the defendants, all of whom have substantial Pennsylvania contacts, will be injured by failure to apply Pennsylvania law.
 
 
 41
 I place particular weight on Pennsylvania's interest in protecting its own residents who become losing defendants in tort suits from being unable to obtain contribution from joint tortfeasors. As noted in that portion of Puller quoted supra, Pennsylvania's policy in favor of contribution in these circumstances, outweighs its policy in favor of interspousal immunity, contribution being viewed as 'the enforcement of an equitable duty to share liability for the wrong done.'
 
 
 42
 The defendants in these cases before us are (1) Mutchnick, a resident of Pennsylvania who had been driving in Pennsylvania, (2) DeVille Leasing, a Pennsylvania corporation, and (3) General Motors, a Delaware corporation. Had the plaintiffs, the Zurzolas, been residents of Pennsylvania, under my reading of Pennsylvania law these defendants would have been able to bring in Matthew Zurzola as a third-party defendant, thus obtaining contribution for any recovery by Rose Zurzola. Pennsylvania's policy in favor of permitting its own residents to obtain contribution in these circumstances is certainly no less when the plaintiff and potential thirdparty defendant are residents of another state.[5]
 
 
 43
 Against these interests of Pennsylvania in applying its own law of contribution must be weighed the interest of New Jersey in applying its law, which at the time of the accident precluded contribution under the circumstances of this case. The majority relies heavily upon New Jersey's interest in preserving family harmony. Indeed, promotion of family harmony was the major reason given by the New Jersey Supreme Court when it adopted the rule prohibiting contribution actions against a plaintiff's spouse. Kennedy v. Camp, 14 N.J. at 394-400, 102 A.2d at 598-600.
 
 
 44
 However, I believe that little or no weight may be given at the present time to New Jersey's original rationale for the rule, since even New Jersey has come to recognize that the rationale is invalid. When the New Jersey Supreme Court overruled Kennedy v. Camp, supra, and ended interspousal immunity in automobile negligence cases, it noted:
 
 
 45
 Regarding the threat to domestic peace, we are doubtful that the marital relationship will be any more disturbed by allowing a cause of action than by denying it.
 
 
 46
 Immer v. Risko, 56 N.J. at 488, 267 A.2d at 484. Since even the New Jersey Supreme Court no longer believes that the Kennedy v. Camp rule against contribution preserved family harmony, I find it quite unlikely that the Pennsylvania courts, in weighing the interests of Pennsylvania and New Jersey in their respective rules, would give weight to New Jersey's interest in preserving family harmony.
 
 
 47
 As we have previously noted, after the accident in the cases before us, the Kennedy v. Camp rule against contribution was overruled in Immer v. Risko, but in Darrow v. Hanover Township the New Jersey Supreme Court refused to apply Immer retroactively. Had Immer been held retroactive, the contribution actions at issue here would clearly be permissible under New Jersey law. I believe, therefore, that the only possible interests of New Jersey in not allowing the present contribution actions to proceed are those reasons it relied upon to continue to apply the Kennedy v. Camp rule to accidents occurring before Immer was decided. Any interests of New Jersey in continuing to apply the Kennedy rule to pre-Immer accidents would represent reasons for refusing to apply Immer retroactively; all other justifications for the Kennedy rule have been abandoned by New Jersey.
 
 
 48
 I therefore turn to an examination of Darrow v. Hanover Township, 58 N.J. 410, 278 A.2d 200 (1971), to determine the reasons why New Jersey continues to apply the doctrine of interspousal immunity to automobile accidents occurring before Immer was decided. The court in Darrow gave as its essential reason for refusing to apply Immer retroactively its fear that retroactive elimination of the immunity doctrine would permit collusive interspousal suits. The court was apprehensive about cases where the insurance company had relied upon interspousal immunity in effect at the time of the accident and therefore found it unnecessary to promptly investigate the circumstances surrounding the accident. The court's decision not to apply Immer retroactively was unrelated to its prior policy to maintain family harmony.
 
 
 49
 As applied to the facts of the instant cases, I believe that this consideration, which is New Jersey's only interest in opposing the third-party actions before us, is entitled to only minimal weight. There is no indication that the Zurzolas' insurance company, in reliance upon the New Jersey rule of interspousal immunity then in effect, failed to promptly investigate the Pennsylvania accident in which its insureds were involved. Moreover, it is inconceivable that an insurance company would rely to such a degree upon an interspousal immunity doctrine of the state of its insureds' domicile that it would fail to even investigate an accident involving a third party which occurred in a foreign jurisdiction which permits contribution suits by third parties against a plaintiff's spouse. New Jersey's interest in protecting insurance companies which relied upon its own prior law thus does not apply to accidents such as this occurring outside of New Jersey, where an insurance company would know that there is at least a possibility that the existing New Jersey law of interspousal immunity would not be applied.
 
 
 50
 I believe, therefore, that the only asserted interest of New Jersey in continuing to apply the Kennedy rule against contribution does not apply to the suits before us. I am left only with Pennsylvania's interests, particularly its strong and consistent concern in assuring its own residents of the equitable right of contribution from joint tortfeasors who are immune from direct action. Accordingly, I conclude that the Pennsylvania courts would apply Pennsylvania law and permit a Pennsylvania defendant, involved in an accident while operating a vehicle on Pennsylvania highways, to bring a third-party action against the plaintiff's spouse for contribution in these suits instituted in Pennsylvania. I would therefore reverse the district court's dismissal of the thirdparty actions.
 
 
 
 [1]
 See also Restifo v. McDonald, 426 Pa. 5, 7 n. 1, 230 A.2d 199, 200 n. 1 (1967), where it is stated:
 Pennsylvania's intrafamily immunity doctrine would prevent plaintiffs (husband and children) from obtaining a judgment against Mrs. Restifo (wife); nevertheless, she would remain liable to the appellant (the original defendant) for contribution if she were found to be a joint tortfeasor (citing Puller v. Puller, supra, and Fisher v. Diehl, supra).
 
 
 [2]
 Since the Falco opinion cites Puller elsewhere, see 444 Pa. at 379, 282 A.2d at 355, it cannot be said that the Falco court failed to expressly overrule Puller because it was unaware of Puller
 2AAs the quotation indicates, the court viewed the husband's action as a direct action against his spouse, even though the husband's suit was brought in part in his capacity as grardian. This holding, while it may slightly broaden the scope of what constitutes a direct interspousal action, certainly does not connote that a defendant's suit for contribution from the plaintiff's spouse constitutes a direct interspousal action.
 
 
 [3]
 Justice Roberts, concurring and dissenting in Falco, contended that a husband should be able to recover directly from his wife as long as he did not institute the suit against his wife, as for example when he sued a third party who brought in the wife as an additional defendant. Since Puller clearly contemplated that the husband could not recover directly from his wife even in these circumstances, Justice Roberts' theory would narrow the scope of interspousal immunity. The Falco court's rejection of this theory is thus a rejection of a narrowing of the immunity doctrine. It is not an expansion of the immunity doctrine beyond that pronounced by Puller
 
 
 [4]
 I note that I would have difficulty with the district court's conclusion that Falco controls under Pennsylvania law even if I agreed that Falco overruled Puller. The accident here occurred in 1969, after Puller but before Falco. When the New Jersey Supreme Court changed its rule on interspousal immunity (reducing immunity), the change was applied prospectively only. See Darrow, supra. It could be contended, therefore, that even if Puller were overruled by Falco, Falco would be applied prospectively only by Pennsylvania courts and the third-party actions at issue here are governed by, and permissible under, Puller
 
 
 [5]
 McSwain v. McSwain, 420 Pa. 86, 215 A.2d 677 (1966), relied upon by the majority, presented a different situation. In that case, husband and wife, both domiciliaries of Pennsylvania, were in an automobile accident in Colorado. The Pennsylvania court held that the wife's direct action against her husband was barred by Pennsylvania's law of interspousal immunity. It reasoned that Pennsylvania's interest in maintaining marital harmony of its domiciliaries outweighed Colorado's interest in deterrence of negligent conduct on its highways through the use of tort liability between spouses. There is no indication in the opinion, however, that had a Colorado resident been involved in the accident, the Pennsylvania courts would have deemed Pennsylvania's interest in marital harmony to outweigh Colorado's interest in protecting its own citizens by imposing tort liability on those who use its highways. Therefore, since McSwain did not involve such a balancing of interest, I do not believe that it supports the majority's conclusion that New Jersey's interest in marital harmony outweighs Pennsylvania's interest in protecting its resident defendants
 
 
 [1]
 Emphasis added
 
 
 [2]
 We note that, inexplicably, none of the parties have made reference to this statute in their arguments or in their briefs in this court. We would have thought that this statute would have merited at least passing mention
 
 
 [3]
 Justices Francis, Hall and Haneman dissenting
 
 
 [4]
 Justice Proctor stated: 'The meaning of this (statutory) provision has been the subject of numerous decisions. See Koplik v. C. P. Trucking Corp., supra, 27 N.J. at 4-7, 141 A.2d 34, and cases cited therein. In Kennedy v. Camp, (14 N.J. 390, 102 A.2d 595 (1954),) this Court held that the above provision did not alter the common law unity of interests of the spouses and hence a husband would not be liable to his wife for injuries caused by his negligent driving of an automobile. Id., 14 N.J. at 397, 102 A.2d 595. Kennedy did not hold that the provision required application of the immunity doctrine but merely that the common law continued unchanged. This reasoning was in accord with earlier cases which held that that provision did not disturb the common law. Hudson v. Gas Consumers' Assn., 123 N.J.L. 252, 253, 8 A.2d 337 (E. & A.1939); Freitag v. Bersano, 123 N.J.Eq. 515, 516, 198 A. 845 (Ch.1938); Drum v. Drum, 69 N.J.L. 557, 558, 55 A. 86 (Sup.Ct.1903). In Koplik, supra, however, this Court held in a four to three decision that 'the common law interspousal negligence tort immunity has been perpetuated (by N.J.S.A. 37:2-5), and that it has been made a part of our statutory law as well.' 27 N.J. at 6, 141 A.2d at 37. Writing for the minority, Justice Jacobs strongly objected to this construction of the statute and expressed his opinion that there was nothing in the provision which either expressly or impliedly incorporated the common law immunity doctrine into the statutory law of the State. In his view the provision merely left the common law 'intact with its inherent capacity for later judicial alteration.' Id. at 18-19, 141 A.2d at 44
 'Three years later, in Long v. Landy, 35 N.J. 44, 171 A.2d 1 (1961) * * * we held that the common law immunity doctrine was not rigidly incorporated into our statutory law; immunity should apply only where the reasons for its existence continue. * * * In other words, the statute did not incorporate immunity, but rather the common law with its inherent capacity for change.' 56 N.J. at 486-487, 267 A.2d at 483.
 
 
 [5]
 See also Currier, Time and Change in Judge-Made Law: Prospective Overruling, 51 Va.L.Rev. 201 (1965)