181 N.J. Super. 579 (1981)
439 A.2d 91
CHARLOTTE COGLIATI, PLAINTIFF-APPELLANT,
v.
ECCO HIGH FREQUENCY CORP., A NEW JERSEY CORPORATION, EMIL R. CAPITA AND BERNARD OSTER, DEFENDANTS-RESPONDENTS,
v.
INVESTORS INSURANCE COMPANY OF AMERICA, THIRD-PARTY DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued November 24, 1981.
Decided December 8, 1981.
As Corrected December 9, 1981.
*581 Before Judges MATTHEWS and PRESSLER.
Melvin R. Solomon argued the cause for appellant (Parsekian & Solomon, attorneys).
Joseph S. Nester argued the cause for respondents Ecco High Frequency Corp. and Emil R. Capita (Russo, Tumulty & Nester, attorneys; Joan M. Donnelly on the brief).
Arthur D. Pajonk argued the cause for the respondent Bernard Oster (Pajonk & Pajonk, attorneys).
Milton Liebowitz argued the cause for the respondent Investors Insurance Company of America (Liebowitz, Liebowitz & Clark, attorneys).
The opinion of the court was delivered by PRESSLER, J.A.D.
These are consolidated appeals from summary judgments in what is essentially a pedestrian-sidewalk fall-down case.
Plaintiff Charlotte Cogliati claims to have fallen on a sidewalk abutting commercial premises located on Kennedy Boulevard in North Bergen. It is her further claim that she sustained serious physical injuries and incurred substantial medical expenses as a result of the fall. Contending that the fall was caused by the negligent maintenance of the sidewalk, she brought a personal injury action against the abutting owners, identified by her as defendants Ecco High Frequency Electric Corp. and Emil R. Capita. She also joined as a party-defendant Bernard Oster, who had sold the abutting premises to Ecco and Capita some 3 1/2 months before the accident. Upon consummation of the sale, Oster had cancelled his liability policy covering the premises. Relying on the cancellation, Oster's carrier, Investors Insurance Company of America (Investors), refused to defend and indemnify. Accordingly, Oster filed a third-party complaint against Investors seeking a declaration of its obligations to him. All parties defendant moved for and were granted summary judgment dismissing the complaint on the ground that under the *582 common law of New Jersey as then most recently stated by the Supreme Court in Yanhko v. Fane, 70 N.J. 528 (1976), property owners owed no duty to the pedestrian public to maintain the abutting sidewalk in good repair but were only responsible for negligent construction or repair or for direct use or obstruction rendering the sidewalk unsafe. On the basis that Oster had no responsibility to plaintiff, summary judgment was also granted in favor of Investors dismissing Oster's third-party complaint against it for indemnification. Plaintiff appeals the summary judgment dismissing her complaint and Oster appeals the summary judgment dismissing his third-party complaint.
Pending the appeals in this court, the New Jersey Supreme Court decided Stewart v. 104 Wallace St., Inc., 87 N.J. 146 (1981), overruling Yanhko v. Fane, in respect of commercial landowners and imposing upon them liability to pedestrians injured as a result of their negligent failure to maintain abutting sidewalks in reasonably good condition. All parties concede that if the holding in Stewart is applied to the facts here, the summary judgment entered against plaintiff would have to be reversed and she would accordingly be entitled to proceed with her action. Thus, the only issue before us is defendants' contention that Stewart must be applied prospectively only.
Recognizing that Stewart does not expressly address the retrospectivity problem, we are nevertheless persuaded that its ruling should be retrospectively applied, at least in respect of pending cases. As the Supreme Court made clear in Darrow v. Hanover Tp., 58 N.J. 410, 413 (1971), the courts of this State "have generally followed the traditional rule that the overruling of a judicial decision is retrospective in nature." And see Fox v. Snow, 6 N.J. 12, 14 (1950); Busik v. Levine, 63 N.J. 351, 360-361 (1973), app. dism. 414 U.S. 1106, 94 S.Ct. 831, 38 L.Ed.2d 733 (1973). Darrow further made clear that the basis for the doctrine of retrospective application is pragmatic rather than theoretical, resting upon the judicial perception that ordinarily "a weighing of the various policies involved called for retrospectivity." *583 58 N.J. at 413-414. Thus, the presumption is in favor of retrospectivity, and that presumption can be overcome only by a clear demonstration in a particular case that there are sound policy reasons for according a judicial decision prospective application only.
Such a case was Willis v. Conservation & Ec. Develop. Dep't, 55 N.J. 534 (1970), in which the court overruled the doctrine of sovereign immunity of the State in respect of tort liability. That decision was expressly limited to prospective application primarily because of its extraordinary impact on the relationships among the branches of government. As Chief Justice Weintraub cogently observed:
There are no appropriations to pay the obligations the courts might declare, not even, perhaps, to handle the caseload which may ensue. The executive branch will need time to prepare for the additional burden. Then, to, the Legislature may wish to require timely notice of claims to permit an opportunity to investigate. Or the Legislature may choose to fix a monetary limit on recoveries, or to exclude some category of damages, or to adopt a concept of liability different from that of the common law, or to entrust the whole matter to an administrative agency. Mindful as we must be that our dollar judgments will be merely declarations, dependent for their ultimate value upon what the Legislature is willing to do to satisfy them, it is appropriate to postpone the effective date to permit an expression of legislative will, rather than to embark at once upon this new course.
Darrow v. Hanover Township, supra, according prospective application only to the judicial overruling of interspousal immunity, also projected an exceptional situation, and its departure from the usual rule of retrospectivity was based on the court's perception of a general community reliance on the continuing stability of the interspousal-immunity doctrine. The court in Darrow was further concerned that at least one significant consequence of that reliance was the then general unavailability of insurance coverage for interspousal torts. Indeed, it noted, the insurance industry itself had theretofore predicated its underwriting policies and its premium structures in reliance on that immunity.
*584 We are satisfied, however, that no such special concerns militating against the retrospectivity rule are here implicated. To the contrary, we find singularly apt the reasoning of Dalton v. St. Luke's Catholic Church, 27 N.J. 22 (1958), which applied the customary retrospectivity rule to the abolition of charitable immunity on the primary basis that the validity of the immunity had been questioned for a considerable time and its demise was consequently foreshadowed.
A brief review of the case law respecting the liability of landowners for the negligent failure to maintain abutting sidewalks convinces was that Stewart was not only foreshadowed but that its holding has been virtually inevitable for almost three decades.
Thus the rule reaffirmed by Yanhko was persuasively challenged by the dissent of Justice Jacobs, joined in by Chief Justice Vanderbilt, in Moskowitz v. Herman, 16 N.J. 223 (1954). In 1971 Justice Proctor, joined by Justice Jacobs, vigorously dissented in Murray v. Michalak, 58 N.J. 220 (1971), from continued adherence to the nonliability rule. In the following year the court, in Brooks v. Orange, 61 N.J. 576 (1972), was equally divided in affirming the Appellate Division's application of the nonliability rule. A year after that, in Muzio v. Krauzer, 62 N.J. 243 (1973), the court's split was four to two. And in Yanhko itself, Justice Pashman, the author of the Stewart majority opinion, noted in his dissent, in which he was joined by Justice Schreiber, that the nonliability rule was not only a problem of "periodic and persistent recurrence' but also a "legal albatross of this Court." 70 N.J. at 537. We doubt that in the entire judicial literature of this State there has been a tort doctrine as vigorously and continuously challenged for as long a period of time and by as many Justices of the Supreme Court as the doctrine interred by Stewart. And we do not doubt that knowledgable members of both the legal and the insurance communities would have predicted that eventual interment as a virtual certainty. So much for the exception to the retrospectivity rule *585 based on reliance upon the assumed continued viability of a legal doctrine.
We would further add that it has not been suggested to us that typical commercial property-owners' liability insurance in force prior to Stewart would not cover a Stewart-based liability.
There are several remaining questions to be addressed. The first relates to the potential liability of Oster, the prior owner, who argues that as a matter of law the liability, if any, of a prior owner for a dangerous condition existing on the property terminates upon his conveyance of title. There are exceptions, however, to that general rule, one of which is the continued liability of the prior owner for a reasonable time after the sale in respect of a dangerous condition created by him and in respect, as well, of a nuisance created by him which involves an unreasonable risk of harm to the public. See Hut v. Antonio v. Guth, 95 N.J. Super. 62 (Law Div. 1967); Sarnicandro v. Lake Developers, Inc., 55 N.J. Super. 475 (App.Div. 1959). In view of the change in the law affected by Stewart, we are satisfied that plaintiff is entitled to prove, if she can, that Oster's conduct vis-a-vis the abutting sidewalk during his period of ownership came within this exception.
Finally, we deal with Investors' contention that even if Oster were liable to plaintiff, Oster's cancellation of the policy upon conveyance resulted in termination of any obligation it might have owed to Oster under the policy. We note merely that this issue was not decided by the trial judge. Investors was let out only because Oster was let out. The legal question of Investors' continuing obligation to Oster, assuming Oster's liability to plaintiff, depends on factual determinations and construction of policy language which in the first instance should be made by the trial court. Investors is, of course, free to pursue that theory in the appropriate forum.
The summary judgments here appealed from are reversed and the matter remanded for trial on the merits.